(March 1, 1913.)

## CRANE FALLS POWER & IRRIGATION CO., LTD., a Corporation, Appellant, v. SNAKE RIVER IRRIGATION COMPANY, LTD., a Corporation, Respondent.

[133 Pac. 655.]

CONTRACT—IRRIGATING CANALS—CONSTRUCTION OF—RIGHT OF WAY— INJUNCTION—ESCROW.

1. *Held*, under the facts of this case and the contract entered into between the C. F. P. & I. Co. with the A. C. W. U. Assn., that the C. F. P. & I. Co. is not entitled to an injunction in this case.

2. *Held*, that the C. F. P. & I. Co. failed to perform the obligations imposed on it by the contract for the construction of an irrigation system, and that the land owners were fully justified in withdrawing their applications or contracts to purchase stock in the A. C. W. U. Assn. from escrow.

3. *Held*, that the equities in this case are with the S. R. I. Co.

APPEAL from the District Court of the Third Judicial District for Ada County.   Hon. Chas. P. McCarthy, Judge.

Action to enjoin the defendant from interfering with an irrigation system alleged to be owned by plaintiff.   Judgment for defendant.   *Affirmed.*

Richards & Haga and McKeen F. Morrow, for Appellant.

The inception of title under sec. 2339, U. S. Rev. Stats. (7 Fed. Stats. Ann. 1090, Comp. Stats. 1901, p. 1437), to a right of way for an irrigation canal over government land

attaches from the time possession is taken and actual construction commenced, and such title becomes a vested or absolute right upon the completion of the works, both as against the government and parties entering such land after possession was taken of such right of way by the person constructing the canal. (*Cottonwood Ditch Co. v. Thom,* 39 Mont. 115, 101 Pac. 825, 104 Pac. 281, 17 Ann. Cas. 1233; *Bear Lake & R. Waterworks & I. Co. v. Garland,* 164 U. S. 1, 17 Sup. Ct. 7, 41 L. ed. 327; Kinney on Irrigation and Water Rights, 2d ed., secs. 934, 935; *Sullivan v. Northern Spy Min. Co.,* 11 Utah, 438, 40 Pac. 709, 30 L. R. A. 186; *Le Quime v. Chambers,* 15 Ida. 405, 98 Pac. 415, 21 L. R. A., N. S., 76.)

The doctrine of relation as applied to water rights at the time the act of Congress of July 26, 1866, was passed (sec. 2339, 7 Fed. Stats. Ann. 1090, Comp. Stats. 1901, p. 1437) applies also to rights of way under said act, for a vested water right cannot be acquired until the works have been completed and the water applied to a beneficial use. And it is not necessary, in order to receive the benefits of said act, that a person should acquire a water right until the works have been completed. (*Schneider v. Schneider,* 36 Colo. 518, 86 Pac. 347; Kinney on Irrigation and Water Rights, 2d ed., sec. 744; *Conger v. Weaver,* 6 Cal. 548, 65 Am. Dec. 528; *Ada County Farmers' Irr. Co. v. Farmers' Canal Co.,* 5 Ida. 793, 51 Pac. 990, 40 L. R. A. 485; *Welsh v. Garrett,* 5 Ida. 639, 51 Pac. 405, 19 Morr. Min. Rep. 193, and cases cited *supra.*)

The grants of rights of way by the individual landholders, the contract of the association, and the acquiescence of all concerned in allowing appellant to go on these lands and construct these ditches and canals, at a cost of from $15,000 to $17,000, raise an estoppel to claim these canals and rights of way, both as against the individuals and as against respondent, who acquired whatever interest the individuals had in the rights of way with full notice of the facts, and without having given value. (Kinney on Irrigation and Water Rights, 2d ed., secs. 984, 1126; *Baker v. C. R. I. & P. Ry. Co.,* 57 Mo. 265; *Miller & Lux v. Kern County Land Co.,*

154 Cal. 785, 99 Pac. 179; *Evans v. Gulf C. & S. F. Ry. Co.,* 9 Tex. Civ. App. 124, 28 S. W. 903, *Crescent Canal Co. v. Montgomery,* 143 Cal. 248, 76 Pac. 1032, 65 L. R. A. 940; *Baillarge v. Clark,* 145 Cal. 589, 104 Am. St. 75, 79 Pac. 268; *Parker v. City of Atchison,* 58 Kan. 29, 48 Pac. 631; *New York v. Pine,* 185 U. S. 93, 22 Sup. Ct. 592, 46 L. ed. 820, *Robertson Mortgage Co. v. Seattle R. & S. Ry. Co.,* 37 Wash. 137, 79 Pac. 610; *Rodemeier v. Brown,* 169 Ill. 347, 61 Am. St. 176, 48 N. E. 468; *Roberts v. N. Pac. Ry. Co.,* 158 U. S. 1, 15 Sup. Ct. 756, 39 L. ed. 873; *Donohoe v. El Paso & S. W. R. Co.,* 11 Ariz. 293, 94 Pac. 1091; *Gustin v. Harting* (Wyo.), 121 Pac. 522.)

Appellant's license to construct these canals was irrevocable. (Wiel on Water Rights, sec. 556, p. 601; Kinney on Irrigation and Water Rights, sec. 983, p. 1740; *Rerick v. Kern,* 14 Serg. & R. (Pa.) 267, 16 Am. Dec. 497; *Stoner v. Zucker,* 148 Cal. 516, 113 Am. St. 301, 83 Pac. 808, 7 Ann. Cas. 704; *Maple Orchards Co. v. Marshall,* 27 Utah, 215, 75 Pac. 369.)

Edwin Snow, Perky & Crow and Wyman & Wyman, for Respondent.

Under the law obtaining in this state, there are two methods of acquiring a water right: One is to follow the statutory procedure and file upon the water with the state engineer, in which case there is a vested right which derives its inception at the time of filing. The other is to disregard the statutory method and to divert the water and apply it to a beneficial use, in which case the water right dates from the time of the application to a beneficial use; since the statutory provision has been made, it is held to be exclusive and to provide the only method by which the right can relate back to its inception. (*Nielson v. Parker,* 19 Ida. 727, 115 Pac. 488.)

The decisions cited in the brief of counsel in regard to the construction of sec. 2339, U. S. Rev. Stats. (7 Fed. Stats. Ann. 1090, Comp. Stats. 1901, p. 1437), for the most part have to do with states in which there is no exclusive statutory provision giving the right of relation. While under the facts

in this case, the construction of the federal statute does not seem necessary, it will perhaps be more fair to this court to refer to the authorities cited in the court below. (*Clear Creek Land & Ditch Co. v. Kilkenny,* 5 Wyo. 38, 36 Pac. 819; *Taylor v. Abbott,* 103 Cal. 421, 37 Pac. 408; *Nippel v. Forker,* 26 Colo. 74, 56 Pac. 577; *Cleary v. Skiffich,* 28 Colo. 362, 89 Am. St. 207, 65 Pac. 59, 62, 21 Morr. Min. Rep. 284; *Jennison v. Kirk,* 98 U. S. 453, 25 L. ed. 240, 4 Morr. Min. Rep. 504; *Bear Lake etc. Co. v. Garland,* 164 U. S. 1, 17 Sup. Ct. 7, 41 L. ed. 327.)

Particular attention is called to that portion of the above case where this matter is discussed and from which it is made perfectly apparent that a right of way cannot be acquired except in connection with a water right, and that title thereto does not vest until the completion of the ditch, and any unreasonable delay in completing the ditch forfeits any claim to a right of way.

If appellant had any remedy, it was in an action for damages, which, if it had sustained injury, would be entirely adequate to the situation. If it desired the possession of the ditches, it could secure such possession under an action in ejectment. It proved no insolvency on the part of respondent under the issue presented in the pleadings. Under these circumstances appellant was not entitled to an injunction. (22 Cyc. 826.)

SULLIVAN, J.—This action was brought by the Crane Falls Power & Irrigation Company, a corporation (which will hereafter be referred to as the Crane Falls Company), against the Snake River Irrigation Company (which will hereafter be referred to as the Snake River Company), to quiet title in the plaintiff corporation to four partially constructed irrigation canals along the Snake river, in the southeastern part of Ada county, and to enjoin the defendant corporation from trespassing thereon and appropriating the same to its own use.

The respondent corporation answered the complaint, and upon the issues joined, the court, without a jury, tried the

case and declined to quiet· plaintiff's title to either of said canals or work constructed by it, and declined to enjoin defendant, as prayed for, and also dissolved the temporary restraining order theretofore issued in said matter, and entered judgment in favor of the Snake River Company for its costs.

The record shows, among other things, the following facts: There is a body of land consisting of about 8,000 acres, situated in the southeastern corner of Ada county, near Snake river; in 1909 the greater portion of said tract had been entered in the United States land office by various settlers under desert and homestead entries, the greater part being under desert entries; the land was arid in character and the settlers desired to secure water for the irrigation of the same, but as such land was situated at an elevation of from 50 to 200 feet above Snake river, the only feasible method of bringing water upon the land was by means of pumps, and it was necessary for many of said entrymen to have water upon their lands in the spring and early summer of 1910 in order to comply with the land laws of the United States; the only recourse of such claimants, if water failed them in 1910, was to abandon· their filings thereon and refile under some other form of entry, or spend large sums of money for scrip with which to enter said land, or to abandon them. Some time during the summer or fall of 1909, the Crane Falls Company began negotiations with some of the settlers upon said land with a view to supplying water therefor, and a written contract was entered into on the 10th of November, 1909, with the Crane Falls Company. Said contract was signed on that date but was not a direct contract between the settlers and said company, but was a contract between said Crane Falls Company, and the Apple Cove Water Users' Association, which association was incorporated in May, 1909, and will hereafter be referred to as the Apple Cove Association.

It appears that as early as May or June, 1909, the settlers, evidently believing that satisfactory terms would be made with said Crane Falls Company, and that a contract would be entered into with it, began signing individual applications to purchase stock of the Apple Cove Association corporation,

and by the end of October, 1909, more than seventy per cent of the number of shares in said Apple Cove Association had been embraced in these written applications, as shown by plaintiff's exhibits 1 to 31, inclusive. It also appears that the settlers appointed a committee, consisting of five of the land owners, to take charge on the part of the settlers of the matter of the preparation of the main contract, which is marked "Plaintiff's Exhibit 34," as well as other matters coming up during the negotiations between the settlers and the Crane Falls Company.

It appears from the testimony that the Crane Falls Company was instrumental in the formation of the Apple Cove Association. The evidence indicates that the Apple Cove Association was incorporated for the purpose of procuring the settlers to sign the contracts with the Crane Falls Company, which contracts are represented by exhibits 1 to 31 contained in the record. After the plant was completed, the settlers were to buy the capital stock of the Apple Cove Association and take over the plant for the water users, or, as stated by witness Chattin, "They were to pay the Crane Falls Irrigation Company for building these ditches and the erection of the plant with the stock of this company [Apple Cove Association], then they were to buy back from them at so much a share." The board of directors of the Apple Cove Association was composed of the individuals who, prior to the time of its organization, had constituted the committee of the settlers and which still constituted that committee, and whose duty, as such, was to represent the land owners and protect their rights and holdings. Had such irrigation plant been completed, the Apple Cove Association would have performed the very important part that an operating company performs under the Carey act contracts with the state.

The committee representing the settlers and the Crane Falls Company, which latter was represented by Hassler and Shettler, finally agreed on the terms of the contract to be entered into between the Crane Falls Company and the Apple Cove Association. That contract provided that appellant should build at its own expense a complete power and pumping plant

and irrigation system, of size and capacity sufficient to deliver water for the proper irrigation of said lands, the system to consist of a power plant and diversion works at Crane Falls, Idaho, and a system of electrically driven pumps and pipelines at Apple Cove, sufficient in size to pump the required amount of water into the heads of the canals which the Crane Falls Company was to build, to carry the water upon the land. In consideration of the building of this system in the manner specified and to be completed by May 1, 1910, appellant was to receive the entire authorized capital stock of the Apple Cove Association. The form of contract agreed upon contained the provision that the Crane Falls Company should give the Apple Cove Association a bond in the sum of $100,000 conditioned upon its faithful performance of the contract. This bond was evidently intended for the purpose of indemnifying the settlers in case they did not get water during the season of 1910, so as to make the requisite proof for the entry of their lands.

It seems clear that up to the time of the execution of said contract it had been understood that the Apple Cove Association was to be protected by a bond fully indemnifying the settlers against the loss occasioned by any failure of the Crane Falls Company to keep its contract. At that time a great number of the settlers had actually signed applications, such as exhibits 1 to 31, contained in the record, for the purchase from the Crane Falls Company of stock in the Apple Cove Association. The first of said applications had been signed in June, 1909. Most of said contracts were signed prior to November 10, 1909, when the contract between the Crane Falls Company and the Apple Cove Association was executed by them, but with an understanding on the part of the settlers of the general nature of the contract to be executed by said corporation, and no doubt on the supposition that a bond would be provided for. It was understood that the main contract should require the Crane Falls Company to construct the power and pumping plant, ditches and diversion works, and receive as full pay for its construction work the entire capital stock of the Apple Cove Association, excepting

five shares which were to go to the directors of the association. It also provided that the Crane Falls Company should sell the stock so received of the Apple Cove Association to the settlers, and the applications for the purchase of this stock, as shown by said exhibits 1 to 31, were made and delivered to the committee of settlers for the purpose of authorizing such committee to deliver the applications to the Crane Falls Company when it had satisfied such committee of its ability to fulfill and complete its contract with the Apple Cove Association in the construction of said system and power plant.

It is provided in said application that the Apple Cove Association is organized for the main purpose of securing the construction of an irrigation system and thereafter owning and operating the same; 2d, that the Crane Falls Company proposes to take all of the capital stock of the association for the full payment for the construction of said system; 3d, that the settler is to purchase a certain amount of the stock of the Apple Cove Association owned by the Crane Falls Company at a certain price, approximately $52.50 per share; 4th, that the settler is to assign his land in trust as security for the payment of the stock; 5th, that upon demand the settler shall give such other mortgage or lien upon his land as shall be approved by the State Land Board, in order to further secure the Crane Falls Co.; 6th, that the shares of stock purchased by the settler shall be put up as a further security; 7th, that the settler is to pay his *pro rata* share of all the tolls and assessments; 8th, that no water is to be delivered while any instalment is due to the Crane Falls Company; 9th, that every share of stock is to represent 1/80 cubic foot of water per acre; 10th, that said application and proposal is entered into with the understanding that it would be accepted and a proper bond executed by the Crane Falls Company on or before October 15, 1909. This latter provision is contained only in applications designated as exhibits 8 and 12 to 31, inclusive.

It will be noted that the applications relate to the purchase from the Crane Falls Company of the stock of the Apple Cove Association, and that no arrangement, agreement or stipula-

tion is made in regard to any right of way or proposed right of way therein.

In October, 1909, after the terms of the main contract between the Apple Cove Association and the Crane Falls Company had been agreed upon, but before the contract was actually executed, C. B. Smith, of Smith, Kerry & Chase, who then owned nearly the entire capital stock of the appellant and were representing the appellant company, came to Mountainhome, and at a meeting with the settlers' committee asked that the provisions of the main contract requiring it to give a $100,000 bond for the performance of said contract be stricken from it. He stated that the bond, if required, would be a hardship on his company, for in order to give it the Crane Falls Company would have to put up a certified check for that amount, and it would simply be out of the use of that amount of money until the plant was completed, and that they were going to put in a plant and give the users water for the 1910 spring irrigation. At that time it was explained to him that the settlers must have water by the spring of 1910 in order to save their land. But in consideration of the promise of said Smith for the Crane Falls Company, to furnish water to the settlers the following spring, the settlers' committee consented to the elimination of the provision from the bond, and according to that agreement the provision requiring a bond was left out of the contract, and on November 10, 1909, the main contract was signed by the Crane Falls Company and the Apple Cove Association. After the signing of said contract the settlers continued to gather individual applications and agreements for the purchase of stock, until by December 13, 1909, it had agreements covering 4,939 shares in its possession ready to deposit in escrow. It seems that the settlers were dissatisfied with certain parts of the contract as it then stood and refused to proceed unless a further modification was made. Accordingly, on December 13th, the appellant company, through its vice-president and acting secretary, consented to such modification, and sent to the Apple Cove Association an instrument modifying the contract in several respects, placing an interpretation on certain clauses, waiving

the requirement that contracts for 5,600 shares be secured, and stating that the money deposited with the escrow-holder should be returned upon the failure of the Crane Falls Company to prosecute such construction work with reasonable diligence until completion. Upon the receipt of said modification in the form of a letter, and relying upon it, as well as upon the agreement that water would be furnished by the spring of 1910, the ten per cent cash and said applications and certain approved notes were placed in escrow with the First National Bank of Mountainhome.

On an examination of said applications and agreement for the purchase of stock by the settler, it appears that the aggregate amount to be paid for the stock of the Apple Cove Association held by the Crane Falls Company was approximately $230,000, and it appears from the record that the Crane Falls Company had expended between fifteen and seventeen thousand dollars in the construction of canals up to the second day of April, 1910, when it quit work.

It is clear from the provisions of the main contract that the Crane Falls Company was to construct said system of canals, pumps, pipe-lines, etc., which, when constructed, was to be the property of the association, and the appellant corporation was to receive the capital stock of the association for its construction work, which capital stock it was to sell to the settlers; and in the main contract said Apple Cove Association agreed to furnish without expense to the power company, free sites and rights of way for pumping plants, substations, pipe, transmission and telephone lines for such works. Under the main contract the Apple Cove Association was to secure a right of way from the settlers, and it no doubt was understood that while the settlers were to furnish such right of way, etc., for the construction of such work, it was not intended that they should convey such right of way and sites to the Crane Falls Company. It was simply to furnish them for the erection and construction of such irrigation system, which system was to belong to the settlers when completed. The Apple Cove Association in its said agreement obligated itself to furnish such sites and rights of way for the construction of said system,

but this obligation was separate from the obligations contained in the applications of the settler to purchase stock.

The individual contracts of the settler, which were offers to purchase by each settler a certain amount of stock in the Apple Cove Association which was held by the Crane Falls Company were placed in escrow with the First National Bank of Mountainhome to be delivered to the appellant upon the completion of its contract. They were not delivered to the Crane Falls Company, but were merely placed in escrow, and the settlers did not agree that said applications should be delivered to the Crane Falls Company until it had constructed said system in compliance with said main contract.

The Crane Falls Company agreed to commence actual construction work on said irrigation system and power plant within thirty days after being notified by the association that the first payment of ten per cent on a certain number of shares of stock or water rights had been deposited with the First National Bank of Mountainhome. It appears from the record that the Crane Falls Company commenced construction work on its canals but did not do anything toward the construction of its power plant up to the time it ceased work in April, 1910, and as an excuse for not doing so, the appellant claims that it had an application pending in the Department of the Interior of the general government for a right of way for its power plant over public land at Crane Falls, and the record shows that it had not procured that right of way up to the time this case was tried in the district court, and it appears from appellant's own showing that it not only did not comply with its contract in the matter of the construction of canals, power and pumping plant, transmission lines, etc., but it had not secured the necessary right of way from the government, without which no diversion of water for power was possible. Appellant made no pretense, and now makes no pretense, of showing that it now or ever will be able to pump water except for the Gem Irrigation District. It is thus made to appear that the delay in constructing said system and in furnishing water to the settlers was due to facts which

still exist as to the construction of the system described in said main contract.

After it became evident to the settlers that the appellant company could not furnish water for the season of 1910, or in any manner complete its work according to its contract, the individual applications for the purchase of stock were taken out of escrow by Smith and Chattin. The record shows that it was done on behalf of all those who had signed these contracts; and it further appears that the consent to withdraw those applications for stock from escrow was given by D. W. Shettler on the part of the company. When it was concluded to withdraw said applications from escrow, Mr. Shettler was sent for by the committee. He stated that he was a representative of the Crane Falls Company, and that he was satisfied that the company had not lived up to its part of the contract, and it was satisfactory to permit the withdrawal of said applications from escrow. It appears from the record that Shettler had been active on behalf of the Crane Falls Company, in promoting its interests and in procuring said main contract. He had been very active in seeing that the parties got together on said main contract and had acted conjointly with the other members of the Crane Falls Company. At the time when a modification of said contract had been sent to Mountainhome, he signed the same as acting secretary. While it is claimed by counsel for appellant that he had no authority to consent to the withdrawal of said applications from escrow, it appears that he had general authority to deal with the settlers and said Apple Cove Association, in relation to the contract.

We think from all the evidence that the settlers, or the Apple Cove Association, on their behalf, had full right and authority to withdraw said applications from escrow. The Crane Falls Company, under its contract, was to build a power plant, which they claimed would cost $500,000, also a pumping plant, pipe-lines, ditches, etc., which would cost fully $100,000, and the only work done up to the time the company ceased work was the building of the canals or ditches referred to, at an expense of from fifteen to seventeen thousand dollars. The main object and purpose of the settlers

was to get water for the land, so that they could make final proof on their desert and other entries during the year of 1910, but nearly two years elapsed after the partial construction of said canals without any further work being done. Some of the settlers lost their lands, some were required to purchase scrip with which to secure title, and others were forced to make refilings. The partially constructed ditches fell into disrepair.

That apparently was the condition of things when the Snake River Company offered to supply water to said settlers, which company is known as a Carey act company, with which company the settlers made a contract for water and under which contract the respondent company proceeded with the construction of its pumping stations, transmission lines and other facilities for furnishing water to the land of the settlers, and entered into the possession of the three partially constructed ditches referred to, and had possession of them at the time of the commencement of this action on March 15, 1912. It has expended considerable money in repairing and completing said partially constructed ditches, and in addition has bought an electrical equipment and pump costing about $30,000 and a pumping station costing approximately $12,000. It had a water permit and expected to complete its system and furnish water to the land by the 15th of May, 1912.

The respondent corporation claims a right to use said partially completed ditches in question because of an arrangement with the parties over whose lands said ditches extend, and it claims in addition that in the absence of such an arrangement it would have a better right to said ditches than appellant, because it was in possession of them at the time when this action was brought. It is further claimed that respondent began the construction of its irrigation system and secured its right to the ditches from the settlers on whose land said partially constructed canals were located, with no knowledge that appellant had a claim on said ditches. Said partially completed ditches were on the lands of the settlers and partly filled with sand and in places were caved and washed. Appellant, on the other hand, waited until respond-

ent had expended large sums of money and actually delivered water to the settlers, then commenced this action, not to secure the value of the ditches on the theory that it owned them, but to enjoin the respondent company from completing said ditches, alleging in this connection that the respondent was insolvent and unable to respond in damages for its purported trespass, an allegation which was denied by the answer and which the appellant company failed to prove on the trial.

The question is then directly presented on the facts, the appellant company itself failing to complete the system in accordance with its contract, to supply the settlers with water, and unable to complete said system after having abandoned it, or at least ceased work on it for nearly two years, can it now maintain this action to enjoin the defendant from using said partially constructed ditches in supplying the settlers with water? We think not. The equities of the case are with the Snake River Company and the settlers.

It is contended by counsel for appellant that the appellant company was the owner of the rights of way over which said partially constructed ditches passed. We cannot agree with that contention. It is true the settlers were to furnish the right of way under the contract, and they were to own the entire system as soon as it was completed. They did furnish the right of way so far as it passed over the land of the settlers, but it was not intended, nor was it necessary, that the title to said right of way should pass to the Crane Falls Company, as the entire system was to become the property of the settlers who purchased the stock of the Apple Cove Association, which the appellant had the right to sell if it complied with its contract.

Said main contract contains a provision that in case the Crane Falls Company fails to furnish water at the time agreed upon, no interest should be charged on the purchase price of said plant until it was furnished. While that is true, it is clear that the intention was to furnish water by the spring of 1910. It failed to furnish water by that time. It has totally failed to perform more than one-fifteenth part of its construction work, and has quit its work altogether. The

land which it was to irrigate is now supplied from another system constructed by the respondent. Many of the settlers owning such lands now are not the original settlers who held the land at the time the negotiations were pending and said main contract was executed. The record shows that the appellant could not perform the contract, and a failure did not result from the fact that said applications were withdrawn from escrow. The failure was in part because of the action of the Secretary of the Interior, and in part it would seem to be the fault of appellant for not rushing the work in the construction of said plant before the power site was withdrawn by the Secretary of the Interior, but that was appellant's misfortune and not the misfortune of the respondent company. This action is not brought to recover the value of said partially constructed ditches or for damages to appellant by reason of the respondent's use thereof, but is brought on the theory that the Crane Falls Company has an irrigation system with which the respondent is interfering.

After a most careful review of the entire case, we are fully satisfied that the judgment of the trial court must be affirmed, and it is so ordered. Costs awarded to respondent.

Ailshie, C. J., and Stewart, J., concur.


### ON REHEARING.

#### (June 21, 1913.)

CONTRACT—CONSTRUCTION OF—CANALS—DITCHES—RIGHTS OF WAY FOR —OVER PUBLIC LANDS—CONSTRUCTION OF STATUTES.

1. *Held,* under the "Application and Agreement for the Purchase of Stock" made by the settlers and the contract between the Apple Cove Association and the Crane Falls Power & Irrigation Company, that it was not the intention of the parties to furnish the Crane Falls Company with title to a right of way for the construction of ditches for the irrigation of the lands of the settlers.

2. Under the laws of this state, there are two methods of acquiring water rights: (1) To proceed as the statute directs; (2) To apply unappropriated water to a beneficial use without making application to the state engineer.

3.   The provisions of sec. 2339, U. S. Rev. Stats., were intended to protect persons in their rights to the use of water and were not · enacted for the purpose of enabling contractors who construct ditches for an agreed compensation to procure title to rights of way for such ditches.

4.   *Held,* under the facts of this case that the appellant corporation was a construction company, and as a construction company is not entitled to a title to a right of way for ditches under the provisions of sec. 2339, *supra.*

5.   The owner of an irrigation ditch, constructed over public lands, does not acquire title in fee to such right of way, but a conditional easement which will be defeated by his failure to use it for the purpose for which it was obtained.

6.   After the commencement of the construction of such canal, the law contemplates that the work shall be prosecuted with due and reasonable diligence to completion.

7.   *Held,* that the provisions of said sec. 2339 were not intended to give anyone title to the right of way for segments of canals merely because they constructed them.

8.   Said sec. 2339 provides for protecting such rights to the use of water as vest and accrue by a priority of possession, and such as are recognized and acknowledged by local customs, laws and decisions of the courts.

9.   The provisions of said sec. 2339 refer to the right of way for such ditches as are used in connection with vested water rights, and unless one has a vested and accrued water right, he is not entitled to an easement over any public lands for the construction of ditches.

10.   Such title as the provisions of said sec. 2339 gives does not vest until the completion of the ditch, and unreasonable delay in its completion forfeits any claim to the right of way.

SULLIVAN, J.—A rehearing was granted in this case and respective counsel made oral argument before this court on the rehearing. In the petition for rehearing it is contended that this court was misled as to the facts of the case by the "erroneous statements, misrepresentations and unwarranted implications" contained in respondent's brief in numerous particulars, but on the oral argument counsel for appellant did not point out wherein the court had been misled as to the facts, and we are fully satisfied that the facts as stated in the original opinion fairly represent the facts involved in this case, and that the court has not been misled in regard thereto.

It is next contended that the court failed to pass upon the rights of appellant under sec. 2339, Rev. Stats. of the U. S. (7 Fed. Stats. Ann. 1090, Comp. Stats. 1901, p. 1437), which involves the appellant's title to the rights of way for the construction of said ditches or canals.   Said section is as follows:

"Whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purpose, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same; and the right of way for the construction of ditches and canals for the purposes herein specified is acknowledged and confirmed; but whenever any person, in the construction of any ditch or canal, injures or damages the possession of any settler on the public domain, the party committing such injury or damage shall be liable to the party injured for such injury or damage."

The question arises as to what right the appellant has secured under the provisions of said section to the right of way for the four segments of ditches referred to, when applied to the facts of this case.   The record shows that none of said ditches have been completed and that it would require the expenditure of a large amount of money to complete said irrigation system.   The ditch nearest the river is 50 feet or more above the level of the river and the highest one is over 200 feet above the level of the river.   After said segments of ditches were constructed, the appellant quit all work thereon April 4, 1910, and had done no further construction work in order to complete the same at the time this action was tried.   The facts are quite fully set forth in the original opinion.   It does not appear from the record that the appellant company owned any water right or any rights to the use of water for the purpose of irrigating said lands; and it further appears that said appellant company was simply a construction company.   It appears from the exhibits, 1 to 31, referred to in the original opinion, and entitled "Application and Agreement for the Purchase of Said Stock," that

the Apple Cove Association was organized for the main purpose of securing the construction of an irrigation system and thereafter owning and operating the same. It is recited in said exhibits as follows:

"Whereas, the undersigned is the owner of the lands and premises hereinafter described, which are situated under and are susceptible of irrigation from said proposed canals, and by reason thereof, is desirous of securing the construction of said canals and the installation of such pumps and pumping plants and the furnishing of power for operating the same;

"Now, therefore, in consideration of the premises and for the purpose of inducing the said Power Company to undertake the construction of said canals," etc.

The object and purpose of the owners of said land was to procure the construction of such canals and works, and it was provided in the contract with the Apple Cove Association that the appellant company should take all of the capital stock of said Apple Cove Association as full payment for the construction of said canals. It is clear from the contract entered into for the construction of said canals and system and the applications referred to that the appellant company is nothing more nor less than a construction company, and that it had not by "priority of possession" rights to the use of water for the irrigation of said land, which had vested and accrued at the time said contract was entered into or at the time it quit work upon said ditches in April, 1910. Said sec. 2339, Rev. Stats. of the U. S. (7 Fed. Stats. Ann. 1090, Comp. Stats. 1901, p. 1437), clearly contemplates that one who seeks the benefit of the right of way for ditches over public lands must have some rights to the use of water which are recognized and acknowledged by the local customs, laws and decisions of the courts of the state wherein such system is being constructed, before it is entitled to the right of way for the construction of ditches or canals for the purposes specified in said section. Said section, being reduced to its clear meaning, might be read as follows: "Whenever rights to the use of water have vested and accrued, the possessors and owners of such vested rights shall be maintained and pro-

tected in the same, and the right of way for the construction of ditches and canals for the purposes herein specified is acknowledged and confirmed.'' ''For the purposes herein specified'' unquestionably means for the purpose of maintaining and protecting the owners and possessors of water rights which have vested and accrued.   Appellant is claiming title to a right of way, and the only right of way claimed is that for the ditches constituting a part of the irrigating system appellant contracted to build for the Apple Cove Association. The easement for a right of way is entirely dependent upon the use, and if there is no use for the ditches under the original purpose there can be no easement.   The appellant has entirely failed to carry out its original purpose for which said ditches were built, and, in fact, cannot now carry out such purpose.   It does not propose and does not offer to do so.   The purpose for which said ditches were built has been accomplished by the work of the respondent company under its agreement with the settlers, and if such right of way was ever secured, it was by the Apple Cove Association, which was to own and hold and operate the ditches after they were built and the system completed for the benefit of the land owners.   Part of the land over which said ditches extend never did revert to the United States government by relinquishment of filings or otherwise, and unless appellant can show its right of way across such tracts of land also, it has no continuous right of way, since continuity of the right of way is wholly broken up by the land of parties who never did relinquish their land to the government after said ditches were constructed.   Said appellant corporation being a construction company merely, and having no water right vested and accrued, it does not come within the scope and meaning of said section 2339.

Under the laws of this state there are two methods of acquiring water rights: One is to follow the statutory procedure and file an application for water with the state engineer, in which case there is a vested right which dates its inception from the time of filing the application with the state engineer.

The .other is to divert unappropriated water and apply it to a beneficial use without making application to the state engineer, which right dates from the application of the water to a beneficial use. The statutory method is the exclusive method by which the right can relate back to the filing of the application with the state engineer. (See *Nielson v. Parker,* 19 Ida. 727, 115 Pac. 488.)

Said sec. 2339 was enacted by Congress to protect the appropriator and user of water. It is an act to protect rights to the use of water and not an act to protect contractors who construct ditches for an agreed compensation for those who desire to use the water. Under the main contract the Apple Cove Association agreed to furnish the right of way over which said ditches were to be constructed. That, however, was for the purpose of constructing the ditches and not for the purpose of vesting title to the right of way in the appellant, the construction company. The main agreement and the applications of the settlers do not contemplate that the construction company should have absolute title to the right of way, but clearly contemplate that the title to the right of way should be retained in the settlers, or in the Apple Cove Association, that being the corporation representing the settlers.

The only permission to construct said canals on the part of the appellant was the permission obtained through the applications for the purchase of said stock by the settlers and the contract of appellant with the Apple Cove Association. The only permission granted to the appellant company was a permission to construct said system for an agreed compensation. The appellant was a construction company, pure and simple. As a construction company its right or demand would be for compensation for the work and labor done and not for title to the rights of way. This right would exist, if at all, against the settlers on their applications for the purchase of stock. Plaintiff's Exhibits 1 to 31 show clearly that whatever implied consent was given by the settlers to the company was merely a permission to construct said canals and not to grant title to appellant to a right of way for said canals.

Under the facts of this case the appellant did not become the owner of the rights of way over which said segments of canals were constructed, either under the provisions of said sec. 2339, U. S. Rev. Stats. (7 Fed. Stats. Ann. 1090, Comp. Stats. 1901, p. 1437), or under said main, or any, agreement or contract.

In 2 Kinney on Irrigation and Water Rights, sec. 934, the author lays down the following rule:

"But the owner of an irrigation ditch constructed over public land never has a title in fee to it, but a conditional easement, which will be defeated by his failure to use it for the original purpose for which it was obtained. Where an appropriator has become entitled to a right of way for his canal, he has a possessory right or interest in the land at the time of the inception of his right, which becomes absolute by the subsequent construction of the works, provided that the construction is prosecuted with all due and reasonable diligence to completion."

If it were conceded in this case that the appellant was an appropriator of water and that it was constructing said ditches for itself and not as a construction company for another, there still remains the fact that it did not prosecute its work "with all due and reasonable diligence to completion," and that there has been an entire "failure to use it for the original purpose for which it was obtained." The appellant ceased its construction work on said ditches in April, 1910, and left the same in an unfinished condition— in a condition that they could not possibly be used for irrigating said land without spending a large amount of money in the completion thereof and in the construction of flumes connecting them with a pumping plant, and the construction of a pumping plant, work on which it is conceded was not commenced at the time this action was brought, to wit, February 15, 1912, about two years after all work had ceased on said ditches.

It appears from the record that the original purpose for which said right of way was intended cannot now be accomplished, for the reason that the settlers owning the land

under said canals have made other arrangements whereby they get water for the irrigation of said lands. The appellant has failed to construct said system "with all due and reasonable diligence to completion," and has failed to use it for the original purpose for which it was intended.

Said section refers to vested rights to use water, and whatever construction may be put upon the meaning of that term, it is plain that the appellant did not have, and did not attempt to show on the trial that it had, a vested and accrued right to use water. The manner in which any right to water could vest and accrue would be for the company to appropriate such water and eventually apply it to a beneficial use. But in this case it has lost all right to apply the water to a beneficial use to said lands, as the purpose under which the ditches were constructed has failed and it has no water. The land to be supplied with water from those ditches is now supplied from another system.

Appellant claims title to the ditches in question. Said sec. 2339, U. S. Rev. Stats. (7 Fed. Stats. Ann. 1090, Comp. Stats. 1901, p. 1437), does not purport to give title to any land, but merely the right to use any land for the purpose of protecting a vested and accrued water right. All of the facts in this case show that the appellant cannot use the ditches for the original purpose for which they were constructed. It does not appear that it has any power to raise the water from the river to supply the ditches with water; that it has any water right; that it has any permission of the land owners to irrigate their lands. It has forfeited and lost the right under which said segments of ditches or canals were originally built to supply said land with water. The provisions of said section 2339 were not intended to give anyone the right to secure title to the right of way for segments of canals and maintain possession thereof merely because they built them without putting them to some use, and in this case, the use for which they were intended.

A number of courts of last resort have construed the provisions of said sec. 2339, U. S. Rev. Stats. (7 Fed. Stats. Ann. 1090, Comp. Stats. 1901, p. 1437).

In *Clear Creek Land & Ditch Co. v. Kilkenny,* 5 Wyo. 38, 36 Pac. 819, the supreme court of Wyoming said: "The inception of the water right of plaintiff in error, without which no right of way for the irrigating ditch to carry the water could exist, arose by appropriation."

In *Taylor v. Abbott,* 103 Cal. 421, 37 Pac. 408, the supreme court of California said: "The plaintiff is not entitled to the relief sought herein by virtue of the provisions of sec. 2339 of the Revised Statutes of the United States. . . . . It merely provides for protecting such rights to the use of water as may have 'vested and accrued' by priority of possession, and as are recognized and acknowledged by local customs, laws and decisions of courts."

In *Nippel v. Forker,* 26 Colo. 74, 56 Pac. 577, the court said: "As it is only the right to, or the right of way for, such ditches and reservoirs as are used in connection with a vested water right that the owner of the latter can assert, unless he first acquires a vested and accrued water right, he is not entitled to an easement over any public lands for a reservoir used in connection therewith."

In *Cleary v. Skiffich,* 28 Colo. 362, 89 Am. St. 207, 65 Pac. 59, 21 Morr. Min. Rep. 284, the court said: "In support of this proposition, sections 2339 and 2340, Rev. Stats. U. S., are relied upon, which provide, in substance, that whenever rights to the use of water for mining purposes have vested, and are recognized by the local customs, laws and decisions of the courts, the owners of such rights shall be protected in the same, and the right of way for the construction of ditches for the purpose of utilizing such water is confirmed."

In *Jennison v. Kirk,* 98 U. S. 453, 25 L. ed. 240, 4 Morr. Min. Rep. 504, the supreme court said: "In other words, the United States by the section said, that whenever rights to the use of water by priority of possession had become vested, and were recognized by the local customs, laws and decisions of the courts, the owners and possessors should be protected in them; and that the right of way for ditches and canals incident to such water rights, being recognized in the same manner, should be 'acknowledged and confirmed.' "

In *Bear Lake & River Water Works & Irr. Co. v. Garland,* 164 U. S. 1, 17 Sup. Ct. 7, 41 L. ed. 327, it is held that it is the doing of the work, the completion of the ditches within a reasonable time from the taking of possession, that gives the right of way for the ditches over or through the public land to one who has a vested and accrued right to the use of the water. It is clear from the discussion in this case by the supreme court of the United States that a right of way cannot be acquired under the provisions of said sections except in connection with a water right, and that title thereto does not vest until the completion of the ditch, and that any unreasonable delay in completing the ditch forfeits any claim to the right of way. The facts in this case clearly show that the construction of the system contracted for was not prosecuted with reasonable diligence; that it cannot be used for the original purpose for which it was partially constructed; and that said segments of ditches were mostly constructed over private lands, or at least lands that had been filed upon under the laws of Congress which afterward became public lands, owing to the fact that the irrigation system of which said ditches were to become a part had not been constructed with reasonable diligence.

We therefore conclude that appellant has not secured any right of way for the segments of ditches constructed by it under the provisions of said sec. 2339 or under said main contract with the Apple Cove Association for the construction of said ditches, or because of said applications of the settlers to purchase water for the irrigation of their lands, and that the conclusion reached in the original opinion in this case must be affirmed and the judgment of the trial court sustained, and it is so ordered. Costs are awarded to respondent.

Ailshie, C. J., and Stewart, J., concur.