(No. 6230. March 19, 1936.)

FRED BACHMAN, FRED L. BACHMAN, RAY KENNISON, THOMAS McMILLAN, OSCAR C. SIMPSON, Respondents and Cross-Appellants, v. REYNOLDS IRRIGATION DISTRICT, an Irrigation District Corporation; THE FEDERAL LAND BANK OF SPOKANE, a Corporation; JOHN E. KEITH and BLANCHE KEITH, His Wife; C. C. TODD and BESSIE TODD, His Wife, Appellants and Cross-Respondents.

[55 Pac. (2d) 1314.]

Walter Griffiths, for Appellants and Cross-Respondents.

Richards & Haga and Davison and Davison, for Respondents and Cross-Appellants.

BUDGE, J.—This suit was commenced by respondents, Bachmans, Kennison, McMillan and Simpson, for the purpose of determining their rights to the waters originating at certain springs, variously known and referred to as Warm Springs, McQuat Springs and Walter Butte Springs. The trial court adjudicated the waters of Warm Springs Creek (the waters of the above springs) basing the awards to each of the parties upon diversion of water and application to beneficial use, as follows: To appellant Keith, 1.72 cubic feet per second with priority of April 1, 1917; to respondents McMillan and Simpson (one tract of land), 1.1 cubic feet per second with priority of April 1, 1917; to respondents Bachmans and Kennison (separate tracts of land), 8.64 cubic feet per second with priority of October 28, 1928; and to appellant Reynolds Irrigation District, 8 cubic feet per second with priority of April 1, 1934, with a proviso for later proof of an additional amount, hereinafter referred to. The award to Keith with first priority is not in controversy, and no issue has been raised by appellants with reference to the priority and water right awarded respondents McMillan and Simpson; however, respondents question the sufficiency of the per acre allotment.

Early records disclose that the springs involved flowed about 40 or 50 inches of water, which, as the court in effect found, flowed through sloughs and a creek to Snake River, when not obstructed. Beginning about 1915 the flow of the springs through natural causes increased to some 324 inches in 1918 and to 1,018.5 inches in November, 1928, since which time the flow has varied between the greatest amount and 830 inches.

Both sides have appealed, appellants urging that the Bachmans and Kennison are entitled to no water for the

alleged reason that the springs in question belong to that class of waters owned by the owners of the land on which the springs are located, and that these respondents acquired no rights to the waters or ditches from the owners or their predecessors in interest. Respondents and cross-appellants urge that they acquired their rights by diversion and application to beneficial use for the reason that the waters were public and subject to appropriation and by their cross-appeal urge that the trial court did not allow them sufficient water for the proper irrigation of their lands considering the type of soil and the necessary and reasonable transportation losses.

Logically, one of the first points to be determined is with reference to the character of the waters involved. Appellants' specification of error III is to the effect that the court erred in finding that Warm Springs Creek is a natural watercourse, and a tributary of Snake River; that said creek had its origin in the springs heretofore mentioned and that the increased flow which had occurred in said springs had not resulted from any acts of appellants nor their predecessors in interest, because the finding is not supported by the evidence and it was established that the springs are not the source of any natural watercourse, and that the increased flow was caused and induced to some extent by the acts of appellants and their predecessors in interest. It is urged by appellants that lakes of a surface area of less than five acres and pools and springs located and contained wholly upon and within lands of a person or corporation, are appurtenant to and a part of the lands and belong exclusively to the owners of the lands. The evidence in part with relation to Warm Springs Creek consists of certain survey field-notes and a plat made therefrom of the township involved. Respondents' exhibits "K" and "K1" are the field-notes and the plat made from a government survey of January, 1870, which was prior to the time any rights involved were instituted. The field-notes give the location of "Warm Spring" and the courses and distances of "Warm Spring Slough" and "Warm Spring Creek" so as to connect the "Warm Spring" with Snake River, referring to the upper end of this course in two places as "Warm Spring Slough" and a little more than half-way down and on to Snake River

as ''Warm Spring Creek.'' The plat made from these field-notes in March 1870, exhibit ''K1,'' portrays ''Warm Spring'' thereon, and the conventional sign used on the plat to designate a watercourse continuously connects ''Warm Spring'' with Snake River over the courses and distances referred to in the field-notes as ''Warm Spring Slough'' and ''Warm Spring Creek.'' Appellants' exhibit ''1,'' a map prepared from a survey made between May 1 and December 15, 1928, and including the same area, portrays ''Walter Butte Springs'' (Warm Spring) and ''Warm Springs Creek'' heading at the spring and continuing to the river. A comparison of these exhibits shows that the watercourse of 1870, referred to as ''Warm Spring Slough'' and ''Warm Spring Creek,'' in the field-notes, is almost identical in courses and distances with the course and distances of Warm Springs Creek as shown on the map of 1929. The plat of 1870 indicates that the upper reaches of Warm Springs Creek was a flat boggy area and clearly pictures why this portion was referred to in the field-notes as ''Warm Spring Slough.'' Nevertheless a continuous watercourse is clearly indicated on the plat of 1870 from Warm Springs to Snake River. The fact that these waters flowed through sloughs would not necessarily change the character of the water-course nor make such waters not subject to appropriation. (Kinney on Irrigation, vol. 1, p. 513; *Hutchinson v. Watson Slough Ditch Co.*, 16 Ida. 484, 101 Pac. 1059, 133 Am St. 125; *Turner v. James Canal Co.*, 155 Cal. 82, 99 Pac. 520, 132 Am. St. 59, 17 Ann. Cas. 823, 22 L. R. A., N. S., 401.) While there is testimony that Warm Springs Creek was not a continuous watercourse prior to the institution of the first rights involved herein there likewise was testimony that it was a continuous watercourse in addition to the showing contained in the exhibits heretofore referred to. The following also appears in appellants' exhibit ''3A,'' a deed purporting to convey certain lands on which Warm Spring is located, water rights, etc., from appellant Keith and wife to Reynolds Irrigation District:

''And all those certain springs known as Walter Butte Springs situate thereon, *said springs being the source of supply of Warm Springs Creek.*''

■ ■ There was likewise testimony that the increased flow occurred after irrigation on neighboring tracts and after an earthquake in 1915. The evidence was conflicting, but there was substantial evidence supporting the finding of the trial court and such finding and the conclusions and decree entered in accordance therewith will not be disturbed. (*Brown v. Grubb,* 23 Ida. 537, 130 Pac. 1073; *Smith v. Faris-Kesl Const. Co.,* 27 Ida. 407, 150 Pac. 25; *Clinton v. Utah Const. Co.,* 40 Ida. 659, 237 Pac. 427; *Gould v. Hill,* 43 Ida. 93, 251 Pac. 167; *Portland C. L. Co. v. Hansen L. & F. Co.,* 43 Ida. 343, 251 Pac. 1051; *Intermountain Assn. v. H. N. Hallstrom Coal Co.,* 53 Ida. 151, 22 Pac. (2d) 686.) I. C. A., sec. 41–103, provides:

"The right to the use of the waters of rivers, streams, lakes, springs, and of subterranean waters, may be acquired by appropriation."

and I. C. A., sec. 41–101, recites:

" . . . . All the waters of the State, when flowing in their natural channels, *including the waters of all natural springs* and lakes within the boundaries of the State are declared to be the property of the State, whose duty it shall be to supervise their appropriation and allotment to those diverting the same therefrom for any beneficial purpose, and the right to the use of any of the waters of the State for useful or beneficial purposes is recognized and confirmed; . . . . "

The conclusion that the waters of Warm Springs Creek are public waters of the state and subject to appropriation is not out of harmony but in accord with the conclusion reached in *Marshall v. Niagara Springs O. Co., Ltd.,* 22 Ida. 144, 125 Pac. 208, in which case Smalley Springs created a watercourse running into Snake River, the entire stream and the springs being entirely located upon the lands of appellant. Therein the court said:

"We are inclined to think that the trial court was correct in finding that Smalley springs, or the waters thereof, or the stream flowing therefrom, was not owned by the appellant, and that the waters of said springs at all times have been owned by the state of Idaho, subject to appropriation."

The finding of the court with relation to diversion and use by respondents recited:

"That for more than five years prior to the institution of this suit, to-wit; ever since the 28th day of October, 1928, plaintiffs Fred Bachman, Fred L. Bachman and Ray Kennison have diverted and used the water of said Warm Springs Creek during a portion of the time to the extent of the full carrying capacity of the Bachman-Kennison ditch and have used an amount to the extent of 8.64 cubic feet of water per second of time in the irrigation of the respective tracts of land hereinafter described as belonging to them, and said diversion and use have been open, notorious, continuous, uninterrupted, peaceful and adverse to the defendants herein, and each of them, and to their, and each of their, predecessors in interest. . . . . "

The court likewise determined the question which was raised but left unanswered in *Kennison v. McMillan Sheep Co.,* 46 Ida. 754, 270 Pac. 1062, as to what water Bachman and Kennison were conveying through the ditch, waste water or live water, the court herein finding:

" . . . . Thereafter (July, 1928) the said plaintiffs Fred Bachman, Fred L. Bachman and Ray Kennison, carried live water through said Bachman-Kennison ditch from the point of diversion from Warm Springs Creek to their lands hereinafter described for the irrigation and cultivation thereof."

There is ample evidence to support the court's finding with reference to the appropriation of water by the Bachmans and Kennison by actual diversion and use. (*Crane Falls etc. Co. v. Snake River Irr. Co.,* 24 Ida. 63, 133 Pac. 655; *Nielson v. Parker,* 19 Ida. 727, 115 Pac. 488; *Reno v. Richards,* 32 Ida. 1, 178 Pac. 81.)

While it appears that the waters of Warm Springs Creek were subject to appropriation, and likewise that respondents initiated and completed a right to a portion of such waters, such fact does not entirely dispose of appellants' contention, they urging that respondents Bachman and Kennison are not entitled to the rights decreed them for the further reason that their point of diversion and a part of their diverting ditch, through which the waters are conveyed, are upon the land of appellant Keith, relying in part on *Marshall v. Niagara Springs O. Co., Ltd., supra,* and *Short v. Praisewater,* 35 Ida. 691, 208 Pac. 844. The fundamental of this contention

of appellants is illustrated by the language used in *Marshall v. Niagara Springs O. Co., Ltd., supra,* that:

"The constitution and laws of this state specifically recognize the right to divert and appropriate the unappropriated waters of any natural stream to a beneficial use, and that such right shall never be denied, but this does not mean that a person is given a right to go upon private property of another for the purpose of making an appropriation, without the license or consent of the owner, or before such right is given by proceedings for condemnation."

It is urged by appellants that respondents Bachman and Kennison must, under the evidence, be held to be exercising a mere privilege in using appellant Keith's land for a portion of their ditch and their point of diversion of the waters, which is subject to be terminated at the will of the owners of the lands and the springs, it having been held in *Marshall v. Niagara Springs O. Co., Ltd., supra,* that an appropriation of water (as against the owner of land trespassed upon) upon private land could not be initiated by trespass on private property. It may be here observed that the rights of respondents were not initiated by trespass on the land of Keith but under some sort of agreement, license or consent, upon the terms of which the parties are not now in accord. The trial court found that respondents Bachman, Kennison, McMillan and Simpson, and appellant Keith are tenants in common in the "Bachman-Kennison Ditch." All parties to this action with the exception of Reynolds Irrigation District divert and convey their waters from Warm Springs Creek through what is now known as the "Bachman-Kennison Ditch." The upper end of this ditch, from the point of diversion to a point on or near the McMillan-Simpson land, was first constructed and was known as the Sproat ditch and later this ditch was enlarged by Bachman, Kennison and Roby by prolongation from its end at the McMillan-Simpson land to the Bachman-Kennison land, and also by enlarging the upper end, or former Sproat ditch. The point of diversion of the Bachman-Kennison ditch thus lies upon the land of appellant Keith, the ditch then courses a short distance across public land, then across one side and a corner of appellant Keith's land, then through the McMillan-Simpson

land and on to the Bachman-Kennison lands. The question raised by appellants is with relation to the ditch right upon and over the Keith land (referred to as the Sproat ditch section). Appellants urge in their brief that all respondents were ever granted was a revocable license or permissive use in the Sproat ditch section, subject to termination at any time. The evidence shows conclusively that Bachmans and Kennison have secured their water for their lands entirely through the Bachman-Kennison ditch and for each season since the extension was constructed, and likewise, as the court found, since July 1928, have "carried live water through said Bachman-Kennison Ditch from the point of diversion from Warm Springs Creek to their lands hereinafter described for the irrigation and cultivation thereof." The court found:

"That about November, 1918, plaintiffs Fred Bachman and Ray Kennison and one Ashton Roby, predecessor in interest of plaintiffs Fred Bachman, and Fred L. Bachman in a portion of the lands hereinafter described, began the construction of what is now known as the Bachman-Kennison ditch, and sometime thereafter enlarged that portion of the ditch originally known as the Sproat Ditch, from the point of diversion from Warm Springs Creek, . . . . to a point a short distance North of the North Line of the South half of the Southwest Quarter of Section 2, . . . . and extending said ditch from that across . . . . (public land) completing said Bachman-Kennison ditch during the year 1921, and said plaintiffs first began to irrigate their lands by means of water carried through said ditch in the year 1921, and have irrigated their lands hereinafter described during each and every irrigation season since 1921 . . . . "

There is also evidence that year after year after enlarging the Sproat ditch section respondents Bachman and Kennison kept or assisted in keeping this section open and cleaned out and free of moss and silt. As to the nature of their right to use the ditch the evidence is in conflict, respondents testifying that the Sproats agreed to grant them an easement for the ditch over the Sproat land, the Sproats to reserve the first right to the water for the amount of land they were then irrigating, but that some years later when the agreement was finally presented by Hugh Sproat the Bachmans and Kennison refused to sign the same because it proved to be

a revocable license. On the other hand, the Sproats testified in effect that they gave neither license, permission nor any right, either revocable or otherwise, David Sproat, with relation to the agreement, testifying as follows:

"I told him that he could survey from the end of the ditch (Sproat ditch) but they absolutely were not to have anything to do with that ditch, that was positively understood, and I objected even to them driving a stake in it. Q. On the land? A. Yes, in the Sproat ditch. Q. Did you have any talk with them as to the reason why? A. Well, not any more than it was understood from a previous conversation with Roby that he could have what water I was not using, but any right that he would have there would be absolutely after—he could use any water that I was not using, I didn't intend to waste water but if there was water going past there down the creek and it would be of beneficial use to him, I thought it was absolutely all right for Mr. Roby to make a ditch and take it on down. Q. But you refused to permit him to come on the place to acquire a right over your place? A. *I refused to permit him to acquire any right in the ditch.*"

█ It appears that whether the original use of that portion of the ditch located upon the land of Keith was permissive in its inception or was under a revocable license is not controlling. In addition to the testimony that respondents refused to sign the agreement permitting them the use of the ditch because it appeared to be a revocable license, there is evidence of a later and positive repudiation of a revocable license or mere permissive use, knowledge of which repudiation was brought home to appellant Keith's predecessor in interest, the McMillan Sheep Company. In a prior action relating to the same subject matter as that now in controversy, *Kennison v. McMillan Sheep Company, supra,* the McMillan Sheep Company and David Sproat, then owners of the Keith land, were enjoined from interfering with respondents', Bachman and Kennison, use of the ditch in an action brought by respondents here to restrain interference with their right to use the ditch. This court upon appeal reversed and remanded the cause with instructions to grant a new trial. There was no new trial and the lower court upon the coming down of the *remittitur*, October 20,

1928, dissolved the injunction. It likewise appears, without conflict, that while this case was pending on appeal, Hugh Sproat, president of the McMillan Sheep Company, shut down respondents' headgate and turned the water down Snake River and that respondent Bachman and his son then went to the head of the ditch, conversed with Hugh Sproat, and notwithstanding his heated protest turned the water down the ditch, took the water and thereafter used it, carrying it through the ditch without interruption or interference thereafter. After this action of the president of the McMillan Sheep Company and the bringing of such action to restrain interference in respondents' use of the ditch against the then owners of the land over which the ditch coursed, and the result of the litigation (dissolving the injunction against interference with the use of the ditch), any former permissive use or use under a revocable license was revoked and repudiated and such repudiation and revocation was brought home to the knowledge of both respondents and appellants.

"As we have seen in previous sections, right of way for ditches, canals, or other works may be acquired over private lands by grant from the owner thereof. So, also, such right of way may be acquired over the private lands of another by adverse possession, from which a grant, of course, is presumed. Also ditches and canals after their construction, together with their rights of way, may be acquired by prescription . . . . The right may have its inception by permission or license, but in order to constitute adverse possession of a right to use a ditch or canal across the land of another, originally given by permission or license, the licensee must have repudiated the license and have brought the knowledge of the repudiation home to the owner of the land, and thereafterward must have held adversely for the statutory period. . . . . " (2 Kinney on Irrigation and Water Rights, 2d ed., p. 1870, sec. 1045.)

"Under this state of circumstances (use under revocable license or permission) before there can be any adverse holding, it is necessary for the party claiming the easement for a right of way to have repudiated the license or permission, and to have brought the knowledge of such repudiation home

to the owner of the land giving such permission; and thereafter he must have continued to have held the right adversely for a time sufficient under the statute for the acquisition to an interest in the land by prescription. The right can not be regarded as adverse, while the licensee acknowledges the right of the land owner and pays compensation for the use of the land." (2 Kinney on Irrigation and Water Rights, 2d ed., p. 1744, sec. 985.)

■ 22 Am. & Eng. Ency. of Law, 2d ed., p. 1198; 2 C. J., sec. 228 et seq.; *Barbour v. Pierce,* 42 Cal. 657; *Weidensteiner v. Mally,* 55 Wash. 79, 104 Pac. 143. After the repudiation of the license or permissive use respondents enjoyed the use of the ditch for more than the prescriptive period, uninterruptedly, continuously, notoriously, under a claim of right, with knowledge of the owner and adversely, and there is no evidence of any use of the ditch under a revocable license or permission after October, 1928, when the injunction in *Kennison v. McMillan Sheep Company, supra,* was dissolved. It would thus appear that after October, 1928, the rulé announced in *Taylor v. O'Connell,* 50 Ida. 259, 295 Pac. 247, was applicable, namely:

"The evidence is without conflict that the ditch was used by appellant (respondents here) uninterruptedly and continuously for more than the prescriptive period, which raised a presumption that such use was adverse and under a claim of right (19 C. J. 959); and there is not sufficient evidence (no evidence after October 1928, herein) of parol license to overcome this presumption or justify the above finding of the court. (1 Jones' Commentaries on Evidence, 2d Ed., sec. 41, note 11.)"

■ It is in effect urged that whatever rights may have been acquired by respondents were lost in a decree foreclosing a mortgage of the Federal Land Bank on the McMillan Sheep Company land (now the Keith land), in which case Bachman and Kennison were made parties defendant. After hearing all the evidence bearing on the above question the trial court found: "That for more than five years prior to the institution of this suit, to-wit: ever since the 28th day of October, 1928," respondents "have diverted and used the water of said Warm Springs Creek during a portion of the

time to the extent of the full carrying capacity of the Bachman-Kennison ditch . . . . in the irrigation of the respective tracts of land hereinafter described as belonging to them, and said diversion and use have been open, notorious, continuous, uninterrupted, peaceful and adverse. . . . . '' There is sufficient competent evidence to support this finding.

There would seem to be sufficient competent evidence to support the court's findings as to the duty of water decreed to each and all of the separate tracts of land owned by and in the possession of the respective parties herein, and we are not disposed to disturb the court's findings or decree in this respect.

■ ■ Respondents and cross-appellants under assignments numbered 9 and 12 attack the conclusion of law number 5 and the decree of the court, wherein the court concluded and decreed that appellant Reynolds Irrigation District is entitled to make proof of beneficial use before the Commissioner of Reclamation of an additional amount of water not exceeding 22 cubic feet per second of time, and that in the event of such proof said district would be entitled to the amount of water covered by such proof with a priority of April 1, 1934. It appears from the record that the appellant district failed to prove the issuance of a permit by the state engineer or a compliance with the terms of such a permit as alleged in its cross-complaint. In such circumstances we are of the opinion that the evidence fails to support the conclusion of law complained of and the decree of the court in this respect and that the conclusion and decree are in conflict with the rule announced in *Reno v. Richards,* *supra.* Sections 41–211 and 41–1302, I. C. A., are only applicable where there is a full compliance with the statutes, otherwise the doctrine of relation cannot be invoked. The conclusion of law complained of and this part of the decree should be eliminated.

The cause is remanded to the lower court, with instructions to modify its findings of fact, conclusions of law and decree to conform to the opinion herein expressed. Costs awarded to respondents.

Givens, C. J., and Holden and Ailshie, JJ., concur.

Morgan, J., concurs in the conclusion reached.