596 P.2d 100

**INDUSTRIAL INVESTMENT CORPORATION, Plaintiff-Appellant,**

v.

**C. M. ROCCA, Defendant-Third Party Plaintiff-Respondent,**

v.

**J. Robert TULLIS, Third Party Defendant.**

No. 12547.

Supreme Court of Idaho.

June 13, 1979.

John C. Hepworth of Hepworth, Nungester & Felton, Buhl, for plaintiff-appellant.

Gerald L. Weston of Gigray, Miller, Downen & Weston, Caldwell, for defendant-third party plaintiff-respondent.

SHEPARD, Chief Justice.

This is an appeal from a judgment in an action in which Industrial Investment Corporation sought enforcement of loan guarantees made by Rocca. Judgment was issued in favor of Rocca and against enforcement of the guarantees. We affirm in part, reverse in part, and remand for further proceedings.

On June 1, 1965, plaintiff-appellant Industrial Investment Corporation (IIC), as a result of a written agreement, loaned $33,-000 to Western Vegetable & Cooling Co. Western Vegetable is now a defunct corporation and not a party to this action. The principal of the loan was due on June 1, 1970. Interest on the loan was due every three months throughout the term. Defendant-respondent Curtis Rocca executed a personal guarantee of the loan. Rocca, a resident of California, was a shareholder and director of Western Vegetable. Jun Matsumoto, a resident of Idaho, was a shareholder, director and president of Western Vegetable until his death in October 1968. Matsumoto also executed a personal guarantee of the $33,000 loan. The Matsumoto estate is not a party to this action.

Third-party defendant J. Robert Tullis was a director and president of IIC until the filing of this action. As a result of the loan negotiations, Tullis was elected on May 7, 1965, a director and vice-president of Western Vegetable.

On May 2, 1966, IIC loaned an additional $7,000, to Western Vegetable. The due date of that loan is not clear from the record, but it was repaid. That loan was not guaranteed by Rocca.

As a result of another written agreement, on July 20, 1966, IIC loaned Western Vegetable an additional $30,000. That loan was also personally guaranteed by Rocca and Matsumoto. The total of loans made by IIC to Western Vegetable which were guaranteed by Rocca and Matsumoto then totaled $63,000.

On or about November 19, 1966, Western Vegetable sold some of its real property. Immediately thereafter, a $15,000 payment was made by Western Vegetable to IIC. Of that amount, $7,000 was applied to the liquidation of the May 2, 1966 loan (non-guaranteed), $6,872.66 was applied to reduce the July 20, 1966 loan of $30,000 (guaranteed by Rocca), and the remaining $1,127.34 was applied to the payment of accrued interest. Thereafter, a balance of $23,127.34 remained due on the July 20, 1966 loan. On December 31, 1966, a new five year note was executed by Western Vegetable for that balance due on the July 20, 1966 loan. That new note was due on December 31, 1971, and was personally guaranteed by Rocca and Matsumoto.

An annual meeting of the board of directors of Western Vegetable was held on

May 19, 1967, at which Matsumoto was reelected president, Rocca vice president, and Tullis secretary-treasurer. Tullis was given control of the corporate records and it was determined that all checks should be written by either Tullis or one Irene Victory. Victory was an employee of the Trus Joist Corporation, which is a parent corporation of Tara Corporation. Tullis was a director and manager of Tara Corporation.

In August 1967, IIC loaned Western Vegetable an additional $5,000. That loan was not guaranteed by Rocca. On January 18, 1968, Western Vegetable issued a check to IIC which was signed by Tullis in the amount of $7,571.36. That amount was applied to pay off the August 1967 unguaranteed loan and the accrued interest on all the notes to that date.

In the early months of 1968, Western Vegetable continued to have financial difficulty and one creditor, Commercial Credit Corporation, was about to seize Western Vegetable's lettuce cooling machine, which was security for the debt owed Commercial Credit. According to some testimony, that seizure by the creditor would have resulted in substantial financial loss to Western Vegetable.

█ Tullis contacted Tara Corporation, of which he was director and manager, and discussed the possibility of refinancing that equipment of Western Vegetable. Tara was unwilling to enter into any financial transaction involving Western Vegetable unless IIC would guarantee such a financial arrangement. IIC, through Tullis, agreed to guarantee the transaction. Western Vegetable and Tara entered into an agreement whereby all of the assets of Western Vegetable were sold to Tara Corporation for $60,000.[1] As part of the transaction, all those assets were leased back to Western Vegetable at 19 quarterly rent payments of $4,200, and one final payment of $1,396.01. Although not referred to in the Tara-Western Vegetable transaction documents, IIC orally guaranteed that transaction.

The agreement required that Western Vegetable prepay $8,400 in rental payments. Thus, Western Vegetable received a net amount of $51,600 from that transaction. Apparently, $5,346.51 was applied to liquidate the Commercial Credit Corporation debt and the security interest in the lettuce cooler. In January 1968, Western Vegetable's bank account had an overdraft in the amount of $4,000, and Tullis had covered that overdraft with his personal check. Upon the receipt of the money from the Tara transaction, Western Vegetable issued a check signed by and made out to Tullis for $4,125, to repay Tullis the $4,000 overdraft advance, plus interest. According to Rocca's testimony, he was unaware of that overdraft transaction.

Following the Tara transaction, Western Vegetable issued a check to IIC for $42,413.41. $23,127.34 was applied to the repayment of the entire outstanding principal balance of the December 31, 1966 note (which was personally guaranteed by Rocca). $17,000 of the amount was applied to the principal balance of the June 1, 1965 $33,000 loan (personally guaranteed by Rocca). Thus, a balance of $16,000 remained on the loans guaranteed by Rocca.

Rocca testified that during all the above mentioned times, he resided in California, that he had not been advised of any directors' meetings since 1967, and that the Tara transaction and the application of the funds resulting therefrom were all without his knowledge or approval. On the other hand, Tullis testified that although he had

1. At trial, the appellants argued that the Tara transaction was merely a security agreement, rather than a sale and leaseback arrangement. The district court found the transaction was a sale and leaseback. The documentation evidencing the transaction clearly supports the district court's finding. The appellant assigns error to this finding, but fails to make any argument supporting its position on appeal. It simply states that the transaction was carried on its books as a security agreement and that the lease provides that at the time of the last payment title reverts to Western Vegetable. However, a review of the lease discloses no such title reversion provision. Although there may be situations in which a sale and leaseback will be treated as a security agreement, such is not the case herein. *See generally* I.C. § 28–9–102.

never personally informed Rocca of the Tara transaction, it was his understanding that Matsumoto had so informed Rocca.

In October 1968, Matsumoto died and all of the equipment of Western Vegetable, with the exception of the lettuce cooler, was repossessed by other creditors who held priority liens. Western Vegetable failed to make the equipment lease payments to Tara, and IIC paid Tara $48,600 on its oral guarantee of the Western Vegetable-Tara agreement. On payment of the guarantee amount, Tara transferred the lettuce cooler to IIC, who ultimately sold it in 1974 for $19,000.

At trial it was argued that the guarantees made by Rocca should be extended to cover not only the $16,000 remaining on the loans made by IIC to Western Vegetable and guaranteed by Rocca, but also those amounts which IIC was required to pay under its guarantees of the Western Vegetable-Tara transaction. The trial court held that the guarantees made by Rocca could not be so extended and further concluded that a conflict of interest of its president Tullis was imputed to IIC, and that a court of equity should not enforce *any* of the guarantees of Rocca. We again note that Tullis was president of IIC, as well as director and an officer of Western Vegetable, during the time of the repayment of the aforesaid loans to the creditors of Western Vegetable. Tullis was also a director and officer of Tara at the time of the Tara-Western Vegetable transaction and IIC's guarantee of that transaction.

We also note that Rocca brought suit against Tullis as a third party defendant alleging Tullis' breach of fiduciary duty toward the stockholders of Western Vegetable. As to that allegation, the trial court found in favor of Tullis. No appeal was taken from that ruling of the trial court.

At this point then we are required to examine the "conflict of interest" and "breach of fiduciary duty" allegations and findings in light of Rocca's status as a guarantor rather than a stockholder of Western Vegetable.

A guarantee is an undertaking or promise on the part of the guarantor which is collateral to a primary or principal obligation and binds the guarantor to performance in the event of non-performance of the principal obligor. *Commercial Credit Corp. v. Chisolm Bros. Farm Equip. Co.,* 96 Idaho 194, 525 P.2d 976 (1974); *Durant v. Snyder,* 65 Idaho 678, 151 P.2d 776 (1944). It is a general rule that payment or satisfaction of a principal obligation discharges a guarantor and being once discharged a revival of the debt in any way will not renew his liability. *Holcombe v. Solinger & Sons Co.,* 238 F.2d 495 (5th Cir. 1956); *Continental Bank & Trust Co. v. Akwa,* 58 Wis.2d 376, 206 N.W.2d 174 (1973); 38 C.J.S. Guaranty § 77. In addition, once a creditor has applied a payment to an obligation for which a guarantor is bound, the guarantor is discharged to the extent of the payment and the creditor may not thereafter alter or modify such application. *Reserve Ins. Co. v. Gayle,* 393 F.2d 585 (4th Cir. 1968); *Olson Constr. Co. v. United States ex rel. Cooper Supply Co.,* 332 F.2d 981 (10th Cir. 1964).

The evidence is clear that the funds received from the Tara transaction were applied to the liquidation of all loans which were guaranteed by Rocca, with the exception of the $16,000 balance. The evidence indicates and the trial court found that the payment of those monies liquidating the indebtedness guaranteed by Rocca was made at the direction of Tullis, who was acting primarily on behalf of the IIC. When findings are supported by substantial, competent, although conflicting evidence, they will not be disturbed on appeal. I.R.C.P. 52(a); *Skelton v. Spencer,* 98 Idaho 417, 565 P.2d 1374 (1977); *Baker v. Ore-Ida Foods, Inc.,* 95 Idaho 575, 513 P.2d 627 (1973).

IIC argues that since the monies from the Tara-Western Vegetable transaction were applied to payment of loans guaranteed by Rocca and since IIC guaranteed the Tara-Western Vegetable transaction, Rocca's guarantees are somehow reinstated, albeit the guaranteed loans have all been paid, with the exception of $16,000.

■ The trial court found that the Tara-Western Vegetable transaction took place without the knowledge and consent of Rocca. That finding is supported by the evidence. The evidence also shows that the funds from the Tara transaction were applied to the payment of loans without the formal approval or direction of the board of directors of Western Vegetable. Further, there is no reference in the Tara-Western Vegetable transaction documents to an oral guarantee by IIC. We hold that IIC's oral guarantee of the Tara-Western Vegetable transaction did not reinstate Rocca's guarantees. A guarantor, like a surety, has been held to be a favorite of the law and his liability is not to be extended by implication beyond the express limits or terms of the instrument, or its plain intent. *Burkhardt v. Bank of America Nat. Trust and Savings Ass'n*, 127 Colo. 251, 256 P.2d 234 (1953). The district court properly held that the payment by Western Vegetable to IIC discharged the guarantee of Rocca as to all but $16,000 of the loans.

We turn now to the assertion of the appellant that even if the trial court was correct in its holding that the IIC guarantee of the Western Vegetable-Tara transaction did not reinstate Rocca's liability as to those portions of the guaranteed loans which were paid to IIC by Western Vegetable, nevertheless $16,000 of those guaranteed loans remains unpaid and Rocca should be liable as to that amount. This action was instituted by IIC against Rocca to enforce his written guarantees of those loans made to Western Vegetable.

The trial court concluded that Rocca should not recover on his third party complaint against Tullis, presumably because there was either no showing of a breach of fiduciary relationship or no showing that damage resulted therefrom. No appeal has been taken from that ruling of the trial court. The cause, therefore, reduces itself to an action by IIC against Rocca to enforce the written guarantees, and the trial court's conclusion that a court of equity should not enforce those guarantees as to the remaining $16,000 unpaid portion of the loans.

It appears, therefore, that we are required to examine the position of Rocca which results from his status as a personal guarantor and not from his status as a stockholder or officer of Western Vegetable. As to those funds from the Western Vegetable-Tara transaction which were used to pay a part of the loans guaranteed by Rocca, as a guarantor Rocca cannot complain of the money being used to reduce an indebtedness which otherwise would be owed by him as guarantor. To the extent of those repayments no damage has resulted to him in his status as a guarantor. Rocca further argues, however, that Tullis improperly applied funds of Western Vegetable by paying certain nonguaranteed loans prior to paying the loans guaranteed by Rocca.

■ As a general rule, in the absence of a contrary agreement, where a debtor owes several debts to a creditor, only some of which are guaranteed, the guarantor is not entitled to control the payments and apply them to the guaranteed debts, and if payment is made without any designation by the debtor as to where it is to be applied, the creditor may apply it to either the guaranteed or nonguaranteed debts, except he cannot apply such payment to a debt which is not due to the exclusion of a guaranteed debt which is due. 38 C.J.S. Guaranty § 78; Annot., 57 A.L.R.2d 855 (1958). *See generally Dalby v. Kennedy*, 94 Idaho 72, 481 P.2d 30 (1971); *Goss v. Iverson*, 72 Idaho 240, 238 P.2d 1151 (1951). Here there is no indication by the trial court of an agreement that the guaranteed loans would be paid prior to the nonguaranteed loans. Thus, the creditor, IIC, would have priority over the guarantor in determining the application of the loan payments.

■ The rights of the guarantor against the creditor are determined in the first instance by the terms of the guarantee contract. However, beyond those contractual rights, the law imposes on the creditor an obligation not to deal with any security for the debt in such a manner as to harm the interest of the guarantor. 38 Am.Jur.2d, Guaranty, § 126 (1968). *See* 38 Am.Jur.2d, Guaranty, § 87 (1968).

As stated in *Universal C.I.T. Credit Corp. v. Whitworth,* 77 Idaho 528, 534, 296 P.2d 712, 716 (1956):

"It is a fundamental principle of the law of guaranty that, with respect to additional security for the payment of a debt, the creditor stands in the position of a trustee for the guarantor, and, if a creditor surrenders or impairs collateral security without the consent of the guarantor, the latter is released to the extent of such negligent loss, impairment, or surrender." *Quoting Mechanics & Metals Nat. Bank v. Pingree,* 40 Idaho 118, 232 P. 5 (1924).

*See generally First Piedmont Bank and Trust Co. v. Doyle,* 97 Idaho 700, 551 P.2d 1336 (1976).

The trial court found only that Tullis' breach of his fiduciary duty and conflict of interest prevented a court of equity from enforcing the guarantees of Rocca. No findings exist indicating that any actions of the creditor, IIC, resulted in damage to Rocca in his position as a *personal guarantor.* As aforesaid, the Western Vegetable-Tara transaction can hardly be said to have damaged Rocca, as a guarantor, as to that portion of the funds used to pay loans he had guaranteed. It would appear that Rocca was damaged, if at all, by a possible preferential payment of unmatured non-guaranteed loans, rather than loans which were guaranteed by Rocca.

It is the province of the trial court, rather than the appellate court, to determine factual questions. I.R.C.P. 52(a); *King v. H. J. McNeel, Inc.,* 94 Idaho 444, 489 P.2d 1324 (1971). In the absence of sufficient findings to determine those factual questions, a remand is necessary. *Perry Plumbing Co. v. Schuler,* 96 Idaho 494, 531 P.2d 584 (1975). We, therefore, find it necessary that this cause be remanded for additional and further findings and conclusions of law on the issue of the liability for the $16,000 balance of the loans made by IIC and which were never paid by Western Vegetable.

We affirm that portion of the district court's judgment discharging all but $16,-000 of the loan guarantees by Rocca. We reverse the remainder of the district court judgment and remand for further proceedings consistent and in conformance herewith.

DONALDSON, BAKES and BISTLINE, JJ., and ROWETT, J. pro tem., concur.