687 P.2d 1348

In the Matter of the GENERAL DETER-
MINATION OF the RIGHTS TO the
USE OF SURFACE AND GROUND
WATERS OF the PAYETTE RIVER
DRAINAGE BASIN.

James D. BRANSON and Martha
Branson, Appellants,

v.

Gorman MIRACLE and Barbara Mira-
cle, husband and wife, Respondents,

and

The Department of Water Resources,
State of Idaho, Respondent.

No. 14813.

Supreme Court of Idaho.

July 9, 1984.
Rehearing Denied Sept. 12, 1984.

Lloyd J. Walker, Twin Falls, for respondents Miracle.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Phillip J. Rassier and David Barber (argued), Deputy Attys. Gen., Boise, for respondent Dept. of Water Resources.

BISTLINE, Justice.

This case of first impression addresses several important questions: the status of water developed through mining operations, as either public water subject to appropriation or non-appropriable private water; and the rights of owners of a mining claim to exclusive enjoyment of water situate thereon.

The Bransons, appellants, and the Miracles, respondents, were joined as parties in the 1969 Payette River Basin water rights adjudication. In August and September of 1977, the parties filed notices of claims to water rights as follows:

| | Source |
| --- | --- |
| Bransons | Water originating from mine tunnel owned by app. |
| Miracles | Unnamed creek |

| Priority Date | Use | Amount |
| --- | --- | --- |
| 1957 | Domestic | .04 cfs |
| | Mining | .5 cfs |
| 1965 | Domestic | 100 gal/day |

The water in question was developed as a result of and emanated from the Bransons' mining tunnel on their "Birthday # 24" mining claim.

The Idaho State Department of Water Resources (Water Resources) filed its Proposed Findings of Water Right on April 26, 1979, which adopted the water rights as claimed by the parties, with the exception of allocating to the Miracles .02 cfs rather than the 100 gallons per day as claimed. No objection by either party was made within the 60-day period provided in I.C.

Claude V. Marcus, Boise, for appellants.

§ 42–1410 [1] which expired on June 25, 1979. However, in November of 1979, the Miracles filed in the district court a motion to permit a late filing of objection to the report and a motion to permit the late filing of an amended notice of claim changing their priority date from 1965 to 1943. On April 1, 1980, the court denied the Miracles' motions and made a final adjudication of the parties' water rights in accordance with the Proposed Findings of Water Resources. On motion for reconsideration, the court vacated its order and allowed the Miracles to file late objections to the Bransons' claim for water for mining purposes. At the same time the court allowed the Bransons to file objections to the Miracles' claim. The court passed the Miracles' motion to permit filing an amended notice of claim.

On May 20, 1982, the district court issued its findings and decree allocating to the Miracles a water right of .02 cfs for domestic purposes with a priority date of 1943. The court allocated the Bransons 50 gallons of water per year for mining purposes with a priority date of July 1, 1957, based on its finding that the mine had not been operating continuously since 1942 except for a three-week period in 1974 and that the Bransons had used 50 gallons per year in their panning operations for assay purposes. The Bransons' claim to .04 cfs of water for domestic purposes was uncontested and this right was decreed with a priority date of June 1, 1957. The court found that the source for all of the claims was a mining tunnel stream known as the Birthday Mine # 24, which waters were and at all times are from an underground source and that "all waters coming out of said Birthday # 24 mining claim tunnel are groundwaters ...." R., p. 63. The court found that there was enough water emanating from the mine to fill the two domes-

tic claims but that there was not enough to fill both the domestic claims and the mining claim.

I.

 The first issue presented on appeal is the effect of I.C. § 42–1410 which provides that:

"Any claimant who desires to object to the report [proposing findings of water rights] shall file his objections with the court within 60 days .... Where no objection is filed with regard to any right found to exist by the director of the department of water resources as evidenced by his report, the district judge shall affirm the right as therein found."

The Bransons argue that this provision is jurisdictional and precludes the district court from considering any objections to Water Resources' report filed later than 60 days after the date of mailing. They argue that the district court is required in this case to affirm the rights found in that report since the objections were not made within the statutory period. We disagree. Although the statute states that claimants shall file objections within 60 days, we interpret this provision as requiring district courts to hear objections raised within that time period but leaving them with discretion to hear objections thereafter. The second provision requiring affirmance where no objection has been filed does not mandate a contrary result. That provision does not require affirmance where the claimant has failed to object *within 60 days*, but only where the claimant has failed to raise *any* objections. Such was not the case here. We find no error in the district court's exercise of discretion in allowing the Miracles to present objections to the report after the 60-day period had elapsed.[2]

II.

The next issue presented on appeal is whether an open flow of water emanating

1. "Any claimant who desires to object to the *report shall* file his objections with the court within 60 days of the date of mailing of such report by the director .... Where no objection is filed with regard to any right found to exist by the director of the department of water re-

sources as evidenced by his report, the district judge shall affirm the rights as therein found."

2. At oral argument Water Resources stated that district courts commonly allow claimants, often uncounseled and lacking knowledge of water

from a mine portal which would not exist absent development of the mine is non-appropriable private water or appropriable public water.

■ I.C. § 42–101 provides that "All the waters of the state, when flowing in their natural channels, including the waters of all natural springs and lakes within the boundaries of the state" are public waters subject to appropriation. I.C. § 42–226 similarly provides that ground waters are public waters subject to appropriation. I.C. § 42–230 defines ground water as "all water under the surface of the ground whatever may be the geological structure in which it is standing or moving." The water emanating from the mine portal falls clearly within this definition of ground water. The water is from an underground source which has been brought to the surface through the excavation of the mine. The district court found in its decree that "all waters coming out of said Birthday # 24 mining claim tunnel are groundwaters," R., p. 63, which we find to be supported by the statutes cited above and by the evidence.

■ The Bransons, however, argue that the water falls within I.C. § 42–212 which defines those waters in the state as private and thus not appropriable without permission from the owner of the land situated thereon. I.C. § 42–212 defines such private waters as "the waters of any lake not exceeding five (5) acres in surface area at highwater mark, pond, pool or spring in this state, which is located or situated wholly or entirely upon the lands of a person or corporation." We are not persuaded by the Bransons' arguments. The evidence offers no support for the water flow being either a lake, pond or pool; the waters here involved are running waters. The Bransons' argument that the mine water is a spring similarly is not persuasive. As the Oregon Supreme Court stated in *Beisell v. Wood*, 182 Or. 66, 185 P.2d 570 (1947), "[a]

'spring' is a place where the water issues naturally from the surface of the earth." *See Holman v. Christensen*, 274 P. 460 (Utah 1929), for the same rule. There was no dispute but that the water flow emanating from the mine was created as a result of the mining operations. *See* Finding of Fact VIII, R., p. 53. The water flow did not issue naturally from the surface of the earth; thus it was not a spring.

■ The Bransons alternatively argue that the mine flow should be considered "developed water" and thus not subject to appropriation by the Miracles. In support of their argument is cited *Reno v. Richards*, 32 Idaho 1, 178 P. 81 (1918) and cases following which stand for the proposition that:

"A person who, by removing obstructions from a stream and constructing artificial works, prevents the loss of water flowing therein through seepage and evaporation, and materially augments the amount of water available from the stream for a beneficial use, has the right to make use of the amount of water so conserved by his efforts in excess of the natural flow of the stream."

Such cases are inapplicable. We do not have here a case in which the flow of a stream is augmented by the removal of growth from the beds and banks of the stream or augmentation as a result of improved irrigation or diversion techniques as in the cited cases. In the present case ground water has been brought to the surface artificially. The Bransons are not responsible for augmenting the amount of ground water available or preventing the loss of ground water available but only for bringing that water to the surface.

We hold that the water flow emanating from the mine portal is public ground water subject to appropriation.

## III.

■ The Bransons next contend that the Miracles failed to provide the requisite ele-

law, to raise objections after the 60-day period has elapsed.

ments of appropriation of water—i.e., diversion and beneficial use of a specific quantity of water. In *Silkey v. Tiegs*, 51 Idaho 344, 353, 5 P.2d 1049, 1053 (1931), this Court held that subterranean waters may be appropriated "either by the statutory permit method ... or by actual diversion and application to a beneficial use." The district court found that:

"There has been utilized domestic water by the Miracles ... in the amount claimed by the Miracles ... from said Birthday # 24 mining claim tunnel since May 1, 1943 through date of this trial."

Conclusion of Law, II, R., p. 58.

The record supports the district court's determination that the Miracles diverted and applied to a beneficial use the .02 cfs of water for domestic purposes.

## IV.

 The Bransons argue that even if the water flowing from the mine portal is considered public water subject to appropriation, the Miracles could not acquire a right to the water through trespass onto their mining claim. It is established that a valid water right cannot be initiated by trespass onto another's property. *Lemmon v. Hardy*, 95 Idaho 778, 519 P.2d 1168 (1974); *Jones v. McIntire*, 60 Idaho 338, 91 P.2d 373 (1939); *Bachman v. Reynolds Irrigation District*, 56 Idaho 507, 55 P.2d 1314 (1936); *Short v. Praisewater*, 35 Idaho 691, 208 P. 844 (1922); *Rabido v. Furey*, 33 Idaho 56, 190 P. 73 (1920). This is true even if that property consists of ownership of a mining claim on the public lands. As the United States Supreme Court stated in *Wilbur v. United States*, 280 U.S. 306, 307, 50 S.Ct. 103, 104, 74 L.Ed. 445 (1929):

"The rule is established by innumerable decisions of this Court, and of state and lower federal courts, that, when the location of a mining claim is perfected under the law, it has the effect of a grant by the United States of the right of present and exclusive possession. The claim is property in the fullest sense of

that term; .... The owner is not required to purchase the claim or secure patent from the United States; but, so long as he complies with the provisions of the mining laws, his possessory right, for all practical purposes of ownership, is as good as though secured by patent." [Citations omitted.]

The United States Supreme Court in *Clipper Mining v. Eli Mining & Land Co.*, 194 U.S. 220, 24 S.Ct. 632, 634, 48 L.Ed. 944 (1904), further held that this "exclusive right of possession forbids any trespass. No one, without his consent, or, at least, his acquiescence, can rightfully enter upon the premises or disturb its surface .... That exclusive right of possession is as much the property of the locator as the vein or lode by him discovered and located." *See McBrown v. Morris*, 54 Cal. 64, 74 (Cal.1881). It is apparent from the record and the district court's findings that the water right here at issue was not *initiated* by trespass. In another context, the district court found that:

"The use of the ¾-inch pipe collecting water from the said mine tunnel stream for the Miracles' domestic purposes was continued until approximately 1972 when the pipe was inadvertently filled by silt and sand. Mr. J.D. Branson, Senior, father of plaintiff J.D. Branson, who for a period of years *as a good neighbor had each spring cleaned the screen at the pipe's inflow*, had allowed it to become filled with debris from the spring run-off."

Finding of Fact XIII, R., p. 55 (emphasis added).

The record amply supports the district court's determination that Mr. Branson, Sr., consented, or at least, acquiesced in the Miracles' diversion of water from the mine tunnel. The rule of *Short v. Praisewater* is applicable in this action:

"Without respondent's consent, appellant could not have entered upon his premises and initiated a valid appropriation to this spring, which did not flow sufficient wa-

ter to create a natural stream that ran beyond the lines of respondent's premises. But appellant, after having acquired the right to develop this spring, and after having dedicated the waters of such spring to the highest beneficial use known to the law, that is, domestic use, his continued and uninterrupted use of this water for a period of more than five years constitutes a valid appropriation, and gives him a right to the use of the water as against respondent, and constitutes a valid appropriation of the water of this spring as against all other persons."

35 Idaho at 701, 208 P. 844 (citations omitted).

The district court's determination that the Miracles, with the consent of the Bransons, or their predecessors in interest, made a valid appropriation of .02 cfs of water for domestic purposes from the mine portal flow is amply supported by the record. As in *Short v. Praisewater*, this right is good against the Bransons and all other persons.

## V.

 Our holding that the Miracles have a valid water right does not answer the question of whether the district court erred in determining that:

"[S]aid Gorman and Barbara Miracle and their heirs, successors and assigns have the *right of ingress and egress* onto and from said Birthday # 24 mining claim for the purposes of maintaining their right to their flow of water above described."

Conclusion of Law VII, R., p. 59 (emphasis added).

The mere fact that one owns a water right does not vest in the owner thereof the right to enter the lands of another for the purposes of maintaining the flow of water.

"The fact that a party has a water right gives him no right to enter the lands of others for the purpose of constructing ditches and canals across them, except over the public lands of the United States. He must obtain that easement and right of way by purchase or condemnation."

*Swank v. Sweetwater Irrigation & Power Co.*, 15 Idaho 353, 360, 98 P. 297, 299 (1908).[3]

*Bachman v. Reynolds Irrigation District*, 56 Idaho 507, 55 P.2d 1314 (1936), involved a case in which respondents were given permission to enter lands owned by appellants for the purposes of diverting water. That permission was later revoked after the respondents had perfected their water right. After the revocation, the respondents continued to enter appellants' property to divert water. The Court held that the respondents could obtain a right to cross appellants' land under the doctrines of adverse possession or prescriptive easement:

" '[R]ight of way for ditches, canals, or other works may be acquired over private lands by grant from the owner thereof. So, also, such right of way may be acquired over the private lands of another by adverse possession, from which a grant, of course, is presumed. Also ditches and canals after their construction, together with their rights of way, may be acquired by prescription .... The right may have its inception by permission or license, but in order to constitute adverse possession of a right to use a ditch or canal across the land of another, originally given by permission or license, the licensee must have repudiated the license and have brought the knowledge of the repudiation home to the owner of the land, and thereafterward must have held adversely for the statutory period ....' (2 Kinney on Irrigation and Water Rights, 2d ed., p. 1870, sec. 1045.)

---

**3.** The fact that the mining claim is located on public land gives the Miracles no right of trespass as the occupier of public lands under a

mining claim has the right of exclusive possession and the right to be free of trespass, *see* Part IV *supra.*

" 'Under this state of circumstances (use under revocable license or permission) before there can be any adverse holding, it is necessary for the party claiming the easement for a right of way to have repudiated the license or permission, and to have brought the knowledge of such repudiation home to the owner of the land giving such permission; and thereafter he must have continued to have held the right adversely for a time sufficient under the statute for the acquisition to an interest in the land by prescription. The right can not be regarded as adverse, while the licensee acknowledges the right of the land owner and pays compensation for the use of the land.' (2 Kinney on Irrigation and Water Rights, 2d ed., p. 1744, sec. 985.)"
*Bachman,* 56 Idaho at 518–19, 55 P.2d 1314.

■■■ The district court in determining that the Miracles had the right of ingress and egress to maintain their right to the flow of water made no findings regarding the source of that right. It cannot be established from the court's findings of fact whether the Miracles established the requisite elements of prescriptive easement or adverse possession. The determination of whether the Miracles established a right to enter the Bransons' property under either of these grounds or under any other theory is a question of fact. No findings having been made in this regard, and we remand to the trial court for such determination. We note, in remanding, that if the Miracles fail to establish any legal or equitable right to enter the Bransons' mining claim in order to maintain their flow of water, they have the right to proceed by way of eminent domain pursuant to I.C. § 42–1106.[4]

## VI.

■■■ The final issue presented on appeal by the Bransons is whether the district court erred in restricting their water rights for mining purposes to fifty gallons per year. We are not persuaded by the Bransons' contentions in this regard. The district court found:

"At no time from 1942 continuously through to the time of trial, August 18, 1981, has said Birthday #24 mining claim been worked on a consistent or productive basis, with the exception of the summer of 1946 or 1947 when the said tunnel was extended and except for a three-week period in 1974."

R., p. 53.

The district court found that the Bransons had failed to present evidence showing how much water was used for mining or milling operations with the exception of their panning operations for assay purposes in which they used a maximum of 50 gallons per year. The court also found that .5 cfs was in excess of the flow from the tunnel. The district court's detailed findings that the Bransons had only appropriated 50 gallons of water per year for mining purposes are amply supported by the record and will not be set aside by this Court on appeal.

The district court's decree is affirmed in part, reversed in part and remanded with directions for further proceedings consonant to this opinion. Costs to respondents.

DONALDSON, C.J., and HUNTLEY, J., concur.

SHEPARD, J., concurs except as to part V and dissents from part V of the majority opinion.

BAKES, J., sat but did not participate.

4. **"Right of eminent domain.**—In case of the refusal of the owners or claimants of any lands, through which any ditch, canal or conduit is proposed to be made or constructed, to allow passage thereof, the person or persons desiring the right of way may proceed as in the law of eminent domain."