708 P.2d 942

Jay Russell SHIPLEY and Linda Lee
Shipley, husband and wife,
Plaintiffs-Respondents,

v.

Lew D. COOK and Mildred H. Cook,
husband and wife,
Defendants-Appellants.

No. 15406.

Court of Appeals of Idaho.

Nov. 5, 1985.

John C. Souza, Whittier & Souza, P.A., Pocatello, and N. George Daines argued, Daines & Kane, Logan, Utah, for defendants-appellants.

Kenneth E. Lyon, Jr., Pocatello, for plaintiffs-respondents.

BURNETT, Judge.

This case presents two issues: (1) Did buyers of real property breach their contract with the sellers by failing to deliver a debenture in payment of the purchase price? (2) If so, what damages are the sellers entitled to recover? The district court, holding that a breach had occurred, awarded damages equaling the face value of the debenture. For reasons explained below, we uphold the court's determination of a breach, but we vacate the damage award and remand the case for further findings on that issue.

The circumstances surrounding the sale of the ranch are extraordinarily complex. The essential facts, as found by the district judge, are as follows. Thomas Willis entered into an earnest money agreement to buy a ranch in Caribou County from Jay and Linda Shipley. The sellers did not own

the ranch outright. They had acquired it on an installment contract from Jay Shipley's parents, the original owners. A substantial balance remained on that contract. In the earnest money agreement, Willis recited that he would pay a purchase price of $320,000 by discharging a mortgage obligation owed to the Farmers Home Administration (FmHA), by giving the sellers a debenture issued by Murray First Thrift Holding Company (MFT), by giving the original owners a similar debenture from MFT, and by tendering a residual sum in cash to the original owners.

Willis subsequently assigned his interest under the earnest money agreement to a Utah corporation. The corporation, in turn, relinquished its interest in favor of Lew Cook, a principal in the corporation's business. Cook and his wife, taking the place of Willis as buyers of the ranch, executed a "Memorandum of Agreement" with the sellers. The Memorandum expressly incorporated the previous earnest money agreement "to the extent that it does not conflict with further terms of this Memorandum or other exhibits which are attached hereto." The Memorandum left the purchase price intact. It also preserved the scheme by which the FmHA obligation would be discharged, a cash payment would be made, and separate debentures would be furnished to the sellers and to the original owners. However, the Memorandum clarified the procedure by which the debentures would be delivered. The buyers, through their Utah corporation, held an MFT debenture that could be negotiated only in favor of other Utah residents. Accordingly, the Memorandum established a scheme by which this debenture would be returned to MFT and smaller, separate debentures would be reissued to trusts established at a Utah bank for the benefit of the sellers and the original owners.

On or about the closing date, the buyers discharged the FmHA obligation and made a cash payment as provided in the Memorandum. They also delivered their corporation's debenture to the trustee bank and directed MFT to reissue the separate debentures. MFT failed to comply. As the parties later learned, MFT was in financial distress. It ultimately filed a petition for reorganization under Chapter 11 of the Bankruptcy Code.

The sellers brought this suit,[1] alleging that they had not been paid for their interest in the ranch. As noted earlier, the district judge held that the buyers had breached their duty to deliver a reissued debenture to the sellers (or, more precisely, to the bank trustee). The judge awarded damages equal to the face amount of the contemplated debenture. The buyers appealed, asserting that they had fully performed their obligations with respect to the debenture and, in any event, that the judge's damage award was excessive. We now address these issues.

■ The interpretation of written instruments ordinarily presents a question of law. E.g., *Barr Development, Inc. v. Utah Mortgage Loan Corp.*, 106 Idaho 46, 675 P.2d 25 (1983). On such questions, an appellate court exercises free review of the trial court's rulings. However, if the terms of the instruments are ambiguous, interpretation becomes a question of fact. In that event, the trial court's findings are subject to deferential review and will be overturned only upon a showing of clear error. I.R.C.P. 52(a). In this case, the district judge did not indicate whether his ruling that a breach occurred was posited entirely upon the written instruments or whether he had discovered an ambiguity and had ascertained the underlying intent of the parties. The judge simply concluded that the buyers had a "responsibility and duty" to deliver a reissued debenture.

■ However, this omission is not fatal to the district court's judgment. In our

---

1. The original owners did not sue. The Memorandum contained a requirement that the buyers execute a mortgage on the ranch, securing the original owner's debenture. Armed with this mortgage, the owners apparently obtained a settlement. The record does not reveal why the sellers failed to insist upon similar protection.

view, the parties' Memorandum, its exhibits and the earnest money agreement, taken together, unambiguously establish the buyers' duty to furnish the debenture in question. As noted, the earnest money agreement provided that the sellers and the original owners would receive separate debentures. The Memorandum and its exhibits provided a mechanism for obtaining the separate debentures. We are not persuaded, as the buyers now contend, that their obligations were satisfied simply by producing their corporation's debenture and requesting the reissuance of separate debentures. As the district judge observed in his decision, the sellers could not have negotiated the corporation's debenture. It held no economic value for them. Only through the reissuance of separate debentures could the sellers receive the benefit of their bargain.

We are mindful of a "closing statement," attached as an exhibit to the Memorandum, which recites that the buyers agreed "to cooperate to whatever degree is necessary to ensure the securing of this transaction." Upon this language, the buyers would have us hold that their duty was not to deliver reissued debentures but merely to "cooperate" in efforts to procure them. We decline to so hold. The language in question is an excerpt from a paragraph referring to the establishment of the trusts at a Utah bank. The buyers' pledge of cooperation in establishing the trusts does not diminish their primary obligation to obtain reissued debentures to be placed in those trusts.

No issue has been briefed or argued on appeal as to whether the buyers' performance might have been rendered "impossible" by MFT's insolvency. Neither does the record disclose that the district judge made, or was asked to make, findings on this point. Rather, the buyers' contention always has been that they fully performed their obligations. Because we reject that contention, the judge's ruling on the issue of breach must be upheld.

We now turn to the damage question. As stated, the sellers were awarded the full face value of the contemplated debenture. Such value theoretically could have been realized if the debenture were held until maturity. The projected maturity date was in 1986. However, the district judge made no finding that the debenture would be worth its face value in 1986. To the contrary, the judge observed elsewhere in his decision that when this case was tried, MFT debentures had deteriorated to "little, if any, value...."

Generally, the goal of awarding compensatory damages, when a partially executed contract has been breached, is to place the injured party in a position no better and no worse than he would have enjoyed if the breach had not occurred. *Anderson v. Gailey*, 100 Idaho 796, 606 P.2d 90 (1980). Proper damages are those which will fairly compensate the injured party for the loss actually caused by the breach. *Broersma v. Sinor*, 106 Idaho 155, 676 P.2d 730 (Ct. App.1984). In this case, we cannot square the judge's finding that MFT debentures had become virtually worthless with his award of damages encompassing the full face value of the contemplated debenture. By agreeing to exchange their interest in the ranch for a debenture, the sellers accepted the commercial risk that the debenture might not reach its full value or that it might be sold at an unfavorable discount before maturity.

The district judge did not find, and the record does not clearly disclose, the market value of MFT debentures on or soon after the date when the ranch sale was closed. Such value, in our view, is the correct yardstick for measuring the sellers' recovery. The objective must be to place the sellers in a position comparable to that which they would have occupied if their debenture had been delivered. Accordingly, the damage award must be set aside and the case remanded to determine the debenture's probable value.[2]

**2.** No theory of recovery other than contract damages was pleaded below or addressed in the district judge's decision. Consequently, we have no occasion in this appeal to consider any such theory.

In sum, the judgment of the district court is affirmed as to the buyers' liability, but it is vacated with respect to damages. The case is remanded for further proceedings consistent with this opinion. No costs or attorney fees allowed.

WALTERS, C.J., and SWANSTROM, J., concur.