753 P.2d 254

STATE of Idaho, ex rel., John ROONEY, Director of the Department of Law Enforcement of the State of Idaho, Plaintiff-Respondent,

v.

ONE 1977 SUBARU TWO DOOR, VIN A26L–910, 450, and Ten Thousand Three Hundred Dollars, United States Currency, Defendant,

and

Mitchell Campbell, Defendant-Appellant.

No. 16817.

Supreme Court of Idaho.

March 31, 1988.

Lynn, Scott & Hackney, Boise, for defendant-appellant. Gar Hackney (argued).

Jim Jones, Atty. Gen., Tyra Hansen Stubbs (argued), Deputy Atty. Gen., Boise, for plaintiff-respondent.

BAKES, Justice.

The State of Idaho initiated civil forfeiture proceedings against claimant Campbell's 1977 Subaru automobile and $10,300, U.S. currency, alleging that the auto was used by Campbell to deliver controlled substances, and that the $10,300 was found, during a constitutionally authorized search of Campbell's home, in close physical proximity to contraband controlled substances. The trial court entered a judgment forfeiting both the auto and the money. Campbell appeals solely as to the money. We vacate the judgment as to the $10,300 and remand for further findings.

The following facts were stipulated before the district court.

On February 15, 1986, a burglary occurred at the home of Campbell's deceased parents, Roger and DeEtta Campbell. (Roger had previously died on August 5, 1985, and DeEtta had passed away on February 12, 1986. Campbell was appointed personal representative of both estates.) Campbell reported the burglary to the Twin Falls police. Among the items taken were several firearms. Campbell had offered to aid the police in their investigation of the theft by attempting to locate the stolen guns.

The next day, Campbell approached Norma Hernandez (a police informant) and asked if she knew where to obtain stolen

guns; Hernandez agreed to look into this. Campbell offered to pay Hernandez for the guns with either money or drugs. Hernandez then reported Campbell's request to the police, and Hernandez agreed to participate in a "controlled buy" situation.

On February 19, 1986, Campbell gave Hernandez a list of guns he was interested in buying. Two days later, Hernandez took a police-supplied handgun to Campbell's home, arriving at approximately 7:00 p.m. At 7:17 p.m., Hernandez and Campbell left the residence; Hernandez drove her own vehicle, Campbell drove the 1977 Subaru.

Upon arriving at a K–Mart parking lot, Campbell gave Hernandez .282 grams of cocaine HC1, a Schedule II controlled substance. Hernandez understood that the drug was to be given to the person supplying the guns; no money was exchanged or discussed. Hernandez and Campbell then left the parking lot in their respective cars; subsequently, Hernandez relinquished the cocaine to the police.

Later the same evening, Hernandez took more police-supplied firearms to Campbell's home. Campbell entered Hernandez' car, and they drove to a Smith's Food King parking lot where Campbell examined the weapons. Campbell indicated he was not interested in those weapons. Upon returning to Campbell's residence, Campbell gave Hernandez ten tablets of Empirin 3 (which contains codeine), a Schedule III controlled substance, saying, "This should keep your friends happy." After leaving Campbell's home, Hernandez gave the Empirin 3 to the police.

Following these two deliveries, the police obtained an arrest warrant for Campbell and a search warrant for his home. At 10:45 p.m., officers executed the search warrant and placed Campbell under arrest.

The officers searched Campbell's entire home. Various controlled substances and drug paraphernalia were found throughout the house. Marijuana was found in several locations, some of which was located in a "seal-a-meal" package similar to the one containing the money in question. Also discovered were three bottles and one bag of prescription medication which were located in the upstairs master bedroom inside a locked safe. The label on the first bottle was made out to DeEtta Campbell for 60 tablets of Empirin 3 dated January 6, 1986. It actually contained 63 of the tablets. The label on the second bottle was made out to Campbell himself for 30 10–mg. tablets of Valium, Diazepam, a Schedule IV controlled substance, and was dated June 9, 1983. It actually contained 72 5–mg. tablets of Valium and 3 10–mg. tablets of Valium. The label on the third bottle was made out to DeEtta Campbell for 100 tablets of Lanoxin, dated February 26, 1985. It actually contained 40 5–mg. tablets of Valium. The label on the prescription bag stated that it was a prescription issued by the Green Cross Veterinary Hospital for gastrizyme; the bag contained 11 tablets of Empirin 3.

Also found in the master bedroom safe were: (1) $10,000, U.S. currency, in $100 bill denominations, wrapped in a seal-a-meal plastic wrapper similar to the one the marijuana found downstairs was wrapped in; (2) a white envelope containing three $100 bills, U.S. currency; (3) a bank cash advance receipt of the Twin Falls Bank & Trust Company (TFB & T) for $2,500, made out in the name of Roger and DeEtta Campbell and dated December 26, 1985; and (4) various financial records of Mitchell, Roger and DeEtta Campbell.

Dr. Charles Novak had treated DeEtta Campbell from January 8, 1986, to January 17, 1986. She was taking a large number of different medications, including Empirin 3. Dr. Novak advised DeEtta to discontinue all medications except for Lanoxin and a few others not pertinent to the case at bar. Dr. Novak asked Campbell to monitor his mother's use of medications and to remove those not prescribed by Dr. Novak. Campbell agreed to help in this regard.

On August 28, 1985, approximately six months prior to the police search, Campbell had withdrawn $19,525.17 from two savings accounts at TFB & T which were in the names of Roger and DeEtta Campbell, closing both accounts. On October 2, 1985, he withdrew $12,186.08 from another TFB

& T savings account in the name of DeEtta Campbell, closing that account.

Campbell was convicted in federal court on May 6, 1986, of two counts of delivery of a controlled substance. The two convictions stemmed from the previously mentioned transfers of cocaine and Empirin 3 to Hernandez on February 21, 1986. Campbell was not charged with drug offenses involving the other controlled substances and drug paraphernalia found during the February 21, 1986, search of his home.

Based on the foregoing stipulated facts, the Idaho district court ordered forfeiture of both the 1977 Subaru automobile, and the $10,300 found in Campbell's safe. Campbell does not contest the forfeiture of the Subaru, but appeals only as to the $10,300.

I.C. § 37–2744, as applicable during the events at issue,[1] read as follows:

"**37–2744. Forfeitures.**—(a) The following are subject to forfeiture:

. . . .

"(6) All money or currency which shall be found in close proximity to contraband controlled substances....

. . . .

"[d] (2) When property described in paragraphs (2), (3), (5) and (6) of subsection (a) hereof is seized pursuant to this section, forfeiture proceedings shall be filed in the office of the clerk of the district court for the county wherein such property is seized. The procedure governing such proceedings shall be the same as that prescribed for civil proceedings by the Idaho Rules of Civil Procedure. The court shall order the property forfeited to the director if he determines that such property was used, or intended for use, in violation of this act."

In the district court and on this appeal the state argued that the foregoing statute sets out a "per se" rule that money found in close proximity to a contraband controlled substance is automatically forfeitable without any further showing. On the other hand, Campbell argued both to the district court and before this Court on appeal that the statute created only a rebuttable presumption of forfeitability, rather than making the money *per se* forfeitable. In his brief on appeal, Campbell states:

"Since it is at times very difficult, if not impossible, to prove that currency, in fact, is connected with illegal drug transactions, it is the Claimant's position that the 'close proximity' language of subsection (a)(6) creates a rebuttable presumption for forfeitability which can be rebutted by a showing that the currency was not used, or intended to be used, to violate the act. Although this interpretation is not expressly stated in the statute, it can be reasonably construed from a reading of the act as a whole."

The trial court agreed with the state's interpretation of the statute concluding that solely upon proof that the $10,300 was found in close proximity to the controlled substances in the safe, "that all of these items are forfeitable under the Uniform Controlled Substances Act." Alternatively the trial court found that "even if the presumption that cash found in close proximity to contraband controlled substances is subject to forfeiture is rebuttable, Campbell has failed to carry his burden of proof."

Upon review, we are convinced that both parties and the district court misinterpreted the statute. I.C. § 37–2744, at the time of this seizure, required two findings before the $10,300 could be forfeited.[2] First,

---

1. I.C. § 37–2744 was amended after the events in this case transpired. 1986 Idaho Sess. Laws, ch. 286, p. 714. This amendment would have made forfeiture of the $10,300 mandatory simply because it was found in close proximity to contraband controlled substances. All references to I.C. § 37–2744, *infra*, are to I.C. § 37–2744 as it existed on February 21, 1986.

2. Subsequent to the events in question here, the legislature amended I.C. § 37–2744, adopting

what appears to be a "per se" rule of mandatory forfeiture of money or property found in close proximity to contraband controlled substances, without the necessity of finding that the money was used or intended for use in violation of the act. 1986 Idaho Sess. Laws, ch. 286, p. 714. We express no opinion as to the interpretation or the constitutionality of the amended I.C. § 37–2744, as neither party raised the issue below and advised the Court that they were not

the money must have been found in close proximity to contraband controlled substances; and second, the court must find that the currency "was used, or intended for use, in violation of this [the Uniform Controlled Substances] act." I.C. § 37-2744(d)(2). Thus, in their presentations before the district court, both the parties and the court were mistaken as to the evidentiary requirements and burdens of proof required for forfeiture under I.C. § 37-2744. Because the district court found that, even accepting claimant's interpretation of the statute, the claimant had not met his burden of proof in rebutting what the claimant thought was a rebuttable presumption created in favor of the state, the district court made no factual finding on the issue of whether or not the money in question had in fact been "used, or intended for use, in violation of this act."

■ As this Court has held on many occasions, failure to make findings of fact on material issues affecting the judgment requires the judgment to be vacated and the case remanded for additional findings. *Matter of General Determination of Rights to Use of Surface and Ground Waters of Payette River Drainage Basin,* 107 Idaho 221, 687 P.2d 1348 (1984); *Circle C Ranch Co. v. Jayo,* 104 Idaho 353, 659 P.2d 107 (1983); *Industrial Investment Corp. v. Rocca,* 100 Idaho 228, 596 P.2d 100 (1979), *appeal after remand* 102 Idaho 920, 643 P.2d 1090 (Ct.App.1982); *Sherry v. Sherry,* 111 Idaho 185, 722 P.2d 494 (Ct.App.1986); *Kugler v. Northwest Aviation, Inc.,* 108 Idaho 884, 702 P.2d 922 (Ct.App.1985); *Donndelinger v. Donndelinger,* 107 Idaho 431, 690 P.2d 366 (Ct.App. 1984).

■ Further, it is a basic tenet of appellate review that where a trial court has labored under an erroneous interpretation of the law, and where the case was tried without a jury, the appellate court should vacate the judgment and remand the case for new findings in conformity with the correct interpretation of the law. As suc-

cinctly stated by the Minnesota Supreme Court:

"Where in a case tried by the court without a jury the trial court errs as to the rule of law to be applied in considering the evidence in making its findings, the appellate court should vacate the findings made and remand the case with directions to reconsider the entire record and make new findings in the light of the applicable rule of law." *In re Olson's Estate,* 227 Minn. 289, 35 N.W.2d 439, 447 (1948).

*Accord Youakim v. Miller,* 425 U.S. 231, 96 S.Ct. 1399, 47 L.Ed.2d 701 (1976), *on remand* 431 F.Supp. 40 (N.D.Ill.1976), *aff'd* 562 F.2d 483 (7th Cir.1977), *aff'd* 440 U.S. 125, 99 S.Ct. 957, 59 L.Ed.2d 194 (1979) (although supremacy clause claim was not presented to or addressed by district court, such question could have been pursued under complaint; therefore judgment was vacated and case remanded to allow opportunity to air claim); *State v. Carroll,* 670 P.2d 1290 (Haw.Ct.App.1983) (case reversed and remanded since the lower court's action was based on a misinterpretation of the applicable law and on non-dispositive facts); *Oehlert v. Kramer,* 205 N.W.2d 723 (Iowa 1973) (incorporating same language as that quoted from *In re Olson's Estate, supra*); *Houlahan v. Brockmeier,* 258 Iowa 1197, 141 N.W.2d 545 (1966) (where case was tried to court with jury waived and court simply erred as to applicable rule of law, case was reversed and remanded for new findings of fact); 5 Am.Jur.2d *Appeal and Error* § 966 (1962).

■ In this case the parties stipulated to a set of facts for submission to the district court based on their assumptions regarding the interpretation of the statute and the burdens which it placed upon the various parties. In view of the erroneous interpretation of the statute by both parties and the district court with regard to the factual issues to be proved and the burden of proving them, it may well be that, after considering the correct interpretation of the statute which we have rendered in this case,

prepared to argue the issue on appeal. *But see generally Gatewood v. State,* 301 A.2d 498 (Md.

1973); *State v. Spooner,* 520 So.2d 336 (La. 1988).

the parties will have other relevant evidence to submit to the district court. For example, at the retrial, Campbell himself would be a critical witness on the issue of whether or not the money in question had been used, or was intended for use, by him in these drug transactions, and to explain what money or property he used to acquire the cocaine, marijuana, Empirin 3 tablets and Diazepam which he dispensed or possessed in this case.

*Boston Edison Co. v. Campanella & Cardi Constr. Co.*, 272 F.2d 430 (1st Cir. 1959), is squarely on point. It was a case in which a misunderstanding of the law led the parties to try the lawsuit on an inadequate stipulation of facts. Boston Edison, a utility company, held an easement over land adjacent to a tract condemned by the State of Massachusetts for construction of a highway. Two of the utility company's posts were damaged when the weight of an embankment built by a contractor caused the ground surface of the adjoining property to shift. The trial court dismissed the utility company's suit on the ground that legislation protected the contractor and limited the utility company to a remedy against the state.

However, in order to determine whether statutory recovery could be accomplished in the case, at least two factors had to be considered (just as two factors must be considered in the instant case). First, the court had to consider the foreseeability and avoidability of the damage; and second, the court had to consider whether the damage was avoidable under Massachusetts' economic practicability test. In discussing these two elements, the First Circuit Court of Appeals stated that although it was evident that the damage was foreseeable and avoidable, the stipulation was insufficient to permit a considered finding regarding the second factor, *i.e.*, whether the damage was avoidable within the test of economic practicability. Accordingly, it concluded:

> "This is quite apparently due, judging from the briefs, to the fact that the parties failed to realize the dimensions of the problem. ... In clear instances a court has power to relieve parties of a stipulation entered into under a misap-

prehension of law, (citations omitted) just as a new trial may be granted to prevent a miscarriage of justice. We accordingly remand the case to the district court to consider permitting the parties to vacate or amplify their stipulation or to take such other steps as the court may approve.

> "Judgment will be entered vacating the judgment of the District Court and remanding the case to that court for further proceedings not inconsistent with this opinion." 272 F.2d at 433–434.

The inadequacy of the stipulation here, like that in *Boston Edison,* could well be due to a misapprehension of the legal elements of the law, specifically I.C. § 37–2744.

A similar result was reached in *Public Service Mut. Ins. Co. v. Fireman's Fund American Ins. Cos.,* 71 A.D.2d 353, 422 N.Y.S.2d 430 (1979). In *Public Service Mutual* the court reversed and remanded because, due to a misapprehension of the applicable law, the stipulation of facts before the trial court was insufficient to resolve the controversy. The court stated:

> "Although the case was not submitted specifically under CPLR § 3222, the principles governing that section should be given controlling force in this dispute. Hence, this controversy should not be determined on a patently incomplete or truncated record. (Citations omitted.) If a submission is silent on a critical point in dispute, a trial court should refuse to decide the case on the facts as given. (Citations omitted.) With these principles in view, the record should be examined to determine whether it is complete.

> ....

> "Since the agreed statement of facts and the accompanying exhibits were insufficient to resolve this controversy, the judgment cannot be permitted to stand. On remand, the parties may stipulate to a more definite statement or they can permit this action to take its normal course. Accordingly, the judgment ... should be reversed, ... and the case

should be remanded for further proceedings not inconsistent herewith." 422 N.Y.S.2d 431, 433.

*See also Imperial Corp. of America v. Frenchman's Creek Corp.*, 453 F.2d 1338 (5th Cir.1972), and *Logan Lumber Co. v. Comm'r*, 365 F.2d 846 (5th Cir.1966).

By our decision today we have changed both the issues and the burden of proof from those which the parties and the district court understood the law to require and, accordingly, we vacate the judgment below and remand the case to the district court permitting the parties to reopen their proofs to submit any additional evidence they may have regarding the factual issue of whether the $10,300 was used, or intended for use, in violation of the act, as set out in this opinion. Thereafter, the trial court shall make new findings of fact and conclusions of law and enter a judgment accordingly.

The judgment of the trial court is vacated and the case remanded for further proceedings consistent with this opinion. Costs to appellant. No attorney fees on appeal.

SHEPARD, C.J., and McFADDEN, J. Pro Tem., concur.

BISTLINE, Justice, concurring in part and dissenting in part.

I agree with the majority that the trial court and parties misunderstood the applicable burden of proof. Under I.C. § 37–2744(d)(2), the trial court *must* find, as a condition precedent to forfeiture, that the property (here money) was used, or intended for use, in violation of the controlled substances act. Thus, there is *no* rebuttable presumption that money, simply found in proximity to drugs, is forfeitable.[1]

Unfortunately, and worse yet, improperly, the majority remands the case for the taking of new evidence. The government, as a result, will get yet another bite at the forfeiture apple. We should simply reverse and order that Mr. Campbell be sent a check for $10,300, with interest. Why? Because the parties agreed to submit the case for resolution on stipulated facts. *Both* parties agreed that no witnesses would be called and that no evidence would be submitted. Such is a long recognized prerogative of litigants, and the trial court acquiesced in the procedure. Yet Justice Bakes and those who join his opinion will not let the parties live with their agreement. Instead, they are forced to come back to court. Justice Bakes is willing to surmise that at the time of the trial court proceedings, "Campbell *may* have been incarcerated in a federal penitentiary ... and thus not available as a witness." Slip Op. at 8 (emphasis added). Equally true, however, he may not have been. Such impure and unadulterated appellate speculation has no place in appellate review. Just as well to surmise that truth of the matter is that the prosecutor was too busy to be bothered, or was fearful as to how his witnesses would stand up. That would be equally improper. We simply do not know why the facts were stipulated, other than that counsel licensed to practice in Idaho knew what the case was about, knew what admissible evidence was available, and in a commendable effort at conserving judicial resources entered into an appropriate stipulation, and provided the trial court with briefs. The majority's zeal to encourage the forfeiture has blurred the boundaries distinguishing the judicial robe and the prosecutorial hat.

Where, as here, the record consists solely of documentary evidence, and all of the facts necessary for resolution have been stipulated, this Court can make an independent review of that cold record. *See Shipley v. Cook*, 109 Idaho 537, 538, 708 P.2d 942, 943 (Ct.App.1985) (interpretation of written instruments presents question of law); *General Dynamics v. Zantop Airlines*, 147 Ariz. 92, 708 P.2d 773 (App.1985) (where finding of trial court is based entirely on documentary evidence, appellate

---

1. Idaho Code § 37–2744 was amended after the events in this case transpired. 1986 Idaho Sess. Laws, ch. 286, p. 714. The statute now permits a forfeiture without a finding of use or an intent to use as mandated by subsection (d)(2) prior to amendment. The constitutionality of the amended act is suspect. *State v. Spooner*, 520 So.2d 336 (La.1988).

court may make independent decision); *Dowling v. Southwestern Porcelain,* 237 Kan. 536, 701 P.2d 954 (1985) (Supreme Court is in just as good a position to interpret documents as trial court); *Brooks v. Tanner,* 101 N.M. 203, 680 P.2d 343 (1984) (same); *Budget Systems v. Seifert Pontiac,* 40 Colo.App. 406, 579 P.2d 87 (1978) (reviewing court not bound by trial court's interpretation of written documents).

The parties agreed to submit the issue on stipulated facts. Now, on appeal simply because the law as applied to the facts prevents the state from appropriating a large sum of private money, it ill-behooves Justice Bakes to lead a majority into rewarding the prosecutor who is not responsible for the language of the statute the right to start in anew and have a second trial where he can put in new evidence, which Bakes, J., is willing to assume is in existence. The rule has always been otherwise. A party puts in all the evidence which he has been able to muster and that is it. Any additional evidence brought in later must come in under the rubric of "newly discovered."

The evidence now in the record does not support the inference that Campbell planned to buy drugs with the money locked in the safe. No money exchanged hands. Rather, drugs, the possession for which Campbell has already been punished, were exchanged for *information.* Similarly, the record is barren of evidence indicating that Campbell received the money from the sale of drugs. Neither the safe nor the house contained records of drug transactions. *Cf. State v. Garza,* 112 Idaho 778, 785, 735 P.2d 1089, 1096 (Ct.App.1987) (conviction for intent to distribute marijuana upheld where defendants made bookkeeping entries of drug transactions in notebooks). Not a scintilla of evidence was proffered that drugs were bought by or sold to Campbell. Simply put, no nexus exists between the money in the safe and an intent on Campbell's behalf to buy or sell drugs with it. Accordingly, the record cannot sustain the bare finding that the $10,300 was used, or intended for use, in violation of the act.

Thus, unless additional evidence upon remand shows use or intent to use the money to buy or sell drugs, the trial court must find for Mr. Campbell as a matter of law because the government will have failed to carry its burden of proof. Also, I seriously doubt that the government can force Mr. Campbell to testify in order to get additional evidence. Forfeiture proceedings are essentially criminal in nature because their primary purpose is to deter and penalize the commission of an offense. *State v. Spooner,* 520 So.2d 336 (La.1988); *State v. Manuel,* 426 So.2d 140 (La.1983). Consequently, the Fifth Amendment's privilege against self-incrimination prohibits the government from forcing Campbell from testifying on remand. It seems only fair, moreover, that if the government is going to get another chance to show that the money was used or intended for use in violation of the act, Campbell should also have another chance to argue the constitutionality of the forfeiture statute.

The can of worms opened by the majority's remand does little to spare the judicial resources of the district court. This is especially true because the government must proffer additional evidence linking the $10,300 with a showing that Campbell used or intended to use it to buy or sell drugs. Without testimony from Campbell, it is very unlikely the government can carry its burden of proof. The remand is unnecessary.

HUNTLEY, J., concurs.

HUNTLEY, Justice, concurring.

I concur fully in the separate opinion of Justice Bistline and further suggest that lest anyone utilize the 1986 amendment to I.C. § 37-2744 as an indication of legislative policy, they should consider the probable unconstitutionality of that amendment as demonstrated by the analysis of the Supreme Court of Louisiana in *State v. Spooner,* 520 So.2d 336 (La.1988).